EAST AND WIFE V. HYDE.

March 9, 1911.

1. DEMURRER—*Effect of Failure to Pass On.*—When the decree disposing of the main issue of a chancery suit makes no mention of a demurrer to the bill, the demurrer will be regarded as overruled.

2. RESCISSION—*Sale of Land—Prior Sale of Timber Without Knowledge of Vendee—False Representations.*—A purchaser of land under a written contract which entitled him to a fee simple deed free from encumbrances, who has done nothing to impair or waive his rights but has at all times been prompt and ready in good faith to perform his contract, may maintain a bill to rescind the contract where it appears that shortly after entering into the contract he learned for the first time that the vendor had sold the timber on the land, worth several thousand dollars, to a third person who insisted upon his right to cut and remove the same, and the fact of such sale was not only not mentioned by the vendor, but the contrary was represented by him, and the value of the timber was mentioned by him as one of the inducements to purchase.

3. REFORMATION—*Failure to Allege or Prove Mutual Mistake or Fraud.*—A contract for the sale of land will not be reformed so as to make it subject to a prior sale of the timber thereon, where the contract was in writing, and was full and explicit in its terms and no mention was made therein, or elsewhere, of the outstanding timber contract, and it is neither alleged nor proved that there was a failure to exclude the timber from the written contract by innocent omission and under a mutual mistake, or that there was a mistake on the part of the vendor accompanied by fraud, or other inequitable conduct on the part of the vendee.

Appeal from a decree of the Circuit Court of Amelia county. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*James M. Quicke, Jr.,* and *R. G. Southall,* for the appellants.

*T. Freeman Epes, Epes & Epes, Sale, Mann & Tyler* and *Samuel W. Zimmer,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bill in this case was filed by the appellee, C. A. Hyde, to have rescinded a contract entered into on August 30, 1906, between the appellants, W. C. East and wife, and himself, by the terms of which the appellants agreed to deliver to the appellee on the 1st day of February, 1907, a "warranty deed" to a tract of land in Amelia county, containing nineteen hundred and eighty-eight and one-half acres, together with an abstract of title showing the land to be "free and clear" in the appellants. The agreed price of the land was $13,400, of which $1,000 was paid in cash, $1,500 by negotiable note which was subsequently paid and the residue $10,900 was to be paid on the 1st day of February, 1907, when the deed was delivered, at which time the possession was to be given to the appellee. The ground of rescission was that the appellants had not performed their contract and were unable to do so.

The appellants filed an answer and cross-bill, asking for the reformation and specific performance of the contract. The circuit court denied the relief asked by the appellants in their cross-bill, and rescinded the contract in accordance with the prayer of the original bill, ordering the cash payment of $2,500 made by the appellee to be refunded. From that decree this appeal has been taken.

The petition assigns as error the action of the circuit court in sustaining the demurrer of the appellee to the appellants' cross-bill.

It is sufficient to say with respect to this assignment of error, that the record has been searched in vain for any

such order. The decree appealed from brings the cause on to be heard upon the original bill and its exhibits, the answer and cross-bill and its exhibits, the amended answer and cross-bill and the depositions of witnesses, omitting any mention of the demurrer to the cross-bill, and then proceeds to dispose of the case on its merits. So far from this decree sustaining the demurrer to the cross-bill, it must be treated as having overruled it; the established rule of this court being, that when the decree disposing of the main issue of the cause makes no mention of the demurrer, the demurrer will be regarded as overruled. *Miller* v. *Miller*, 92 Va. 196, 23 S. E. 232; *Miller* v. *Black Rock Springs Co.*, 99 Va. 747, 40 S. E. 27, 86 Am. St. Rep. 924; *Dechert* v. *Ches. & Western Co.*, 101 Va. 804, 49 S. E. 799; *Savings Bank* v. *Powhatan Clay Co.*, 102 Va. 274, 46 S. E. 294; *Bledsoe* v. *Robinett*, 105 Va. 723, 54 S. E. 861.

This controversy has grown out of the fact that at the time the contract of August 30, 1906, was entered into, there was, unknown to the appellee, an outstanding timber contract or lease upon the land bought by him, under which the owners of that lease had the right to cut and remove timber from the premises until the May following the date of the contract. When the appellee and the appellant, together with several others, went upon the land to inspect it, some days prior to entering into the contract, it was apparent that saw-mills had been at work in the timber, and that a large quantity had been cut and removed, though no timber was being sawed or cut at that time. There was, however, remaining upon the land a considerable quantity of valuable timber, and this fact was repeatedly urged upon the appellee by the appellant as an important inducement to the purchase he was contemplating, representing that the remaining timber was worth from three to four thousand dollars. It is shown by those present on this occasion, that no mention was then made by the appellant of this

outstanding timber contract.    On the contrary, that he
stated positively more than once that the time of the saw-
mills was out, and that he had made them move from the
premises.    Several days later appellee returned to the land,
when appellant again enlarged upon the value of the remain-
ing timber, and drew for appellee a map of the land for
the purpose of showing the location of the timber, again
refraining from any mention of the outstanding timber
contract.    Several days after the contract was entered
into, appellee learned through a third party, for the first
time, of the existence of the timber contract, and states that
he at once protested to the appellant, who assured him that
not another stick of the timber should be cut, and that he
must not worry about it.    Relying upon this assurance, the
appellee, who lived in Maryland, returned to his home and
was not again in the county of Amelia until about the first
of December, when he discovered men on the land cutting
railroad ties.    He at once protested in the most vigorous
terms, telling the appellant that he would not take the
land or buy at the sale of appellant's personal property,
which was soon to take place, unless the timber contract
was removed and the cutting stopped at once.    Appellant
thereupon assured the appellee that he had made arrange-
ments with a man to buy the timber contract, and that
everything would be all right, and to go ahead and buy
anything he wanted at the auction sale of the personal
property.    Appellee waited for several days for the appel-
lant to comply with his promise to acquire the timber rights,
but ascertaining that no effort had been made to purchase
the same, and being informed by those holding the timber
rights that they had valuable timber there, and that it was
their purpose to proceed at once to cut and remove it, he
wrote a letter, dated December 7, 1906, to the appellant,
telling him of his information that the timber was to
be cut to a finish; that his contract called for a deed in fee,

clear of encumbrance; and that unless the cutting of the timber was stopped and the timber lease gotten in by the following Monday, he did not want the property and would proceed at once to assert his rights. The record abundantly shows that the appellee was, throughout, anxious to secure the property, and that he gave appellant every opportunity to perfect his title; but he always insisted upon a clear and unencumbered title in accordance with the terms of the written contract. As late as December 29, 1906, counsel, who had been then employed by appellee, wrote appellant a letter, from which it appears that appellee was still willing to take the property if the terms of the contract were complied with. And again the last of January, a few days before the sale was, under the contract, to be consummated, appellee sent the appellant a registered letter, telling him that if he had gotten rid of the timber lease and could comply with his part of the contract, to wire him at the Hotel Hamilton, Hagerstown, Md., and he would be there as fast as steam could take him and comply with the contract on his part.

The appellant insists that the written contract of August 30, 1906, should be reformed so as to make it provide that the purchase therein agreed upon was subject to the outstanding timber contract. It is urged in support of this contention that the appellee knew of the timber lease, and that he executed the contract buying the land in the light of that knowledge; that the real contract was that appellee's purchase was to be subject to the existing rights under the timber lease, and that by mistake this provision was omitted from the written memorial. It is neither alleged nor proven that there was a failure to exclude the timber from the written contract by innocent omission and under a mutual mistake, or that there was a mistake on the part of appellant accompanied by fraud or other inequitable conduct on the part of the appellee. The contract is com-

plete on its face and purports to be the whole agreement between the parties.    There is nothing in the writing to suggest that any provision of the agreement had been omitted.    It is very full, providing that all crops of the year, 1906, are reserved to the appellant and it would be strange if so important a reservation as these timber rights had been overlooked if the existence of such rights had been known to the appellee, and he had agreed that his purchase should be subject to them.    This contention, however, is effectually answered by the proof, which abundantly shows that the appellee never knew of the existence of the timber rights until after he had entered into the contract of purchase; and further shows that the appellant did know of the oustanding encumbrance, and was confronted with it on several occasions when it was his duty to mention the fact, but instead of doing so he carefully concealed the truth and made statements well calculated to mislead and prevent inquiry upon the subject.

A vast amount of evidence has been taken in this case, most of which is wholly irrelevant and sheds no light upon the real issue involved.    The important and established facts are that the appellee bought from the appellant a tract of land, under written contract, which entitled him to a fee simple deed, free from encumbrance.    This contract on his part he was ready and anxious to carry out, but was prevented from doing so by the failure of the appellant to perform his contract to deliver an unencumbered title.    The appellee has done nothing to impair or waive his rights, and has been guilty of no laches in asserting them.    The appellant has wholly failed to sustain the charges of his cross-bill, while the allegations of the original bill have been sufficiently established to entitle the appellee to the relief prayed for by him.

The decree appealed from must, therefore, be affirmed.

*Affirmed.*