## Wytheville.

## STONEGAP COLLIERY COMPANY v. HAMILTON.

### June 8, 1916.

1. PLEADING—*Demurrer—Silence as to Ruling On.*—Where the record shows a demurrer filed but no ruling thereon, the demurrer must be regarded as overruled.

2. PLEADING—*Sufficiency in Substance.*—The best pleading is that which states facts and not conclusions of law, and if a pleading to the merits shows sufficient substance for the court to see how to give judgment according to law and the very right of the case it is good, though defective in form, under the provisions of sections 3246 and 3272 of the Code.

3. PLEADING—*Declaration—Sufficiency—Wrong Designation.*—The character and sufficiency of a declaration are to be tested by the facts alleged, and not by any particular designation of it. The fact that the declaration designated an action as "trespass" when the facts alleged show that it is "case" is immaterial.

4. PLEADING—*Sufficiency—Test.*—A declaration is sufficient if it informs the defendant of the nature of the demand made upon him, and states such facts as will enable the court to say that if the facts are proved as alleged they establish a good cause of action.

5. SUBJACENT SUPPORT—*Extent—Waiver.*—The doctrine of subjacent support rests upon the same reasons as that of lateral support, and the grant or reservation of the underlying minerals with the right to remove the same is not a waiver of the right to such support. The owner of the minerals is entitled to only so much of them as he can get without injury to the superincumbent soil. If he intends to have power to get them in any way which will destroy the surface, the language of the grant or reservation must be so framed as to show clearly that he is to have that power.

6. MINES AND MINERALS—*Subjacent Support—Extent—Sinking of a Spring —Surface.*—Where the surface of land and an underlying mine belong to different owners, if the mine owner, in mining the minerals, fails to leave sufficient pillars, props or other means of support to prevent the strata overlying the minerals from breaking and falling, and as a result the said strata are broken, and thereby a spring on the surface is drained and destroyed, the mine owner is liable for resulting damages.

The right of subjacent support is not limited to the support of the mere surface.

7. DAMAGES—*Remoteness—Evidence.*—In an action to recover damages for drying a spring on a tract of land, evidence that the tract was close enough to a town to be divided into lots and tracts and sold for homes is not admissible, as the damage resulting therefrom is too remote and speculative.

8. MINES AND MINERALS—*Percolating Waters—Interception.*—If, in mining in the usual and ordinary way, subterranean streams or percolations of water which feed a spring on the surface are intercepted, thereby causing the spring to sink or become dry, there is no liability therefor upon the owner and operator of the mine.

9. INSTRUCTIONS—*Misleading.*—It is not error to refuse an instruction which is calculated to confuse and mislead the jury.

10. DAMAGES—*Destruction of a Spring—Injury to Adjacent Tract.*—Where the owner of two contiguous tracts of land sues to recover damages for the destruction of a spring on one of the tracts, he may prove and recover the damages resulting to each tract, as he had the undoubted right to use the water on both.

11. EVIDENCE—*Irrelevancy.*—In an action to recover damages for the destruction of a spring on a tract of land, evidence as to the reasons of the plaintiff in purchasing a contiguous tract or the price paid is irrelevant and immaterial.

12. EVIDENCE—*Experts—Support for Hypothesis.*—Where the hypothesis assumed in a question put to an expert is not supported by any evidence in the case, the question put to the expert and his answer thereto, if any, should be excluded from the jury.

13. MINES AND MINERALS—*Destruction of Spring—Evidence—Effect on Mining.*—In an action to recover damages for destroying a spring by breaking the substrata underlying the spring, in a mining operation, evidence that it would be impossible, in that section, to conduct mining in the usual and customary manner without danger of interrupting or stopping the flowing of springs on the surface, is irrelevant and should be excluded.

14. APPEAL AND ERROR—*Views—Discretion of Trial Court.*—Whether or not a view of the premises shall be ordered is a question addressed to the sound discretion of the trial court whose ruling will not be reversed by the appellate court, unless it appears from the record that a view was necessary to a just decision.

Error to a judgment of the Circuit Court of Wise county, in an action of trespass. Judgment for the plaintiff. Defendant assigns error.

*Reversed.*

On motion of the plaintiff the court gave, in addition to the instructions stated in the opinion, the following instructions:

3. The court further tells the jury that if they find that the plaintiff is entitled to recover, the measure of damages is the difference between the value of the two tracts of land known as the J. A. Dotson and the Hansford D. Gilliam tracts, with the spring on the Dotson tract, as it was before the said spring was drained or destroyed, and its value immediately after the spring was drained. And in estimating the damage, they may consider, (1) the damage, if any, resulting to the land for farming and grazing purposes, and (2) the decrease, if any, in the value of the land for residence and other purposes.

4. The court further tells the jury that after the purchase by the plaintiff of the Hansford Gilliam tract of land it was the duty of the defendant in mining the coal under the said tract of land to leave sufficient pillars, props and other means of support to prevent the overlying strata from breaking and falling, and if they further believe that the defendant mined said coal and failed to leave sufficient pillars, props or other means of support to prevent said overlying strata from breaking and falling and that as a result thereof the said strata was broken and fell and the spring on the J. A. Dotson tract drained and destroyed by reason thereof, then they should find for the plaintiff such damages as is their opinion he has sustained not exceeding five thousand dollars.

5. The court instructs the jury that the defendant had the right to mine and remove the coal under the tract of land in question known as the J. A. Dotson tract, and to take down such of the roof over said coal as was reasonably necessary in mining coal and remov-

18

ing same, and if in so doing it tapped the source of the spring on said tract of land and drained it, the defendant is not liable. But the jury are further instructed that it was the duty of the defendant in mining said coal to leave sufficient props, pillars or other means of support to prevent the overlying strata from breaking and falling; and if they believe that the defendant failed to leave sufficient props, pillars or other means of support for said overlying strata and that as a result of such failure it was cracked and broken and the spring on the said land thereby drained and destroyed, they should find for the plaintiff such damages as he sustained so that the same shall not exceed five thoussand dollars.

In addition to the instructions requested by the defendant, stated in the opinion, the defendant requested the following:

The court instructs the jury that the defendant has the legal right to mine all the coal and pull all the pillars without leaving any support whatever under all of the lands adjacent to and binding on the J. A. Dotson tract of land, on the south and west thereof except within five feet along the division line thereof; and if, in so doing the surface of the land above the coal vein so mined is broken and causes the water which had theretofore been flowing on the said J. A. Dotson tract to cease flowing thereon and that by reason thereof the spring in question on the said J. A. Dotson tract of land has been dried up, then, and in that event, it is the duty of the jury to find for the defendant; and they are further told that if they cannot decide from a preponderance of the evidence whether the mining of the coal by the defendant on the lands adjacent to and binding on the said J. A. Dotson tract of land, on the south and west thereof five feet or more from the divi-

sion line thereof, caused the spring in question to dry up, or whether the same was caused to dry up by the mining on said J. A. Dotson tract of land, then it is the duty of the jury, in that event to find for the defendant; and, the court further tells the jury that the burden is on the plaintiff in this case to show by a preponderance of the evidence that the spring in question on the J. A. Dotson tract of land was not dried up by reason of mining on the lands adjacent to said tract lying on the south and west thereof and five feet or more from the division line thereof before they can find for the plaintiff in any sum whatever.

And the jury are further told that although they may believe that the spring on the said J. A. Dotson tract of land was dried up by reason of mining on the said J. A. Dotson tract of land without leaving sufficient supports to sustain the surface of said tract of land intact above the coal vein so mined, yet if they further believe that afterwards the mining of the coal by the defendant on the lands adjacent to the said J. A. Dotson tract on the south and west thereof and five feet or more from the division line thereof would have caused said spring to dry up had sufficient support been left on the said J. A. Dotson tract of land to sustain the surface of the said land above said coal vein intact, the jury cannot find damages for the plaintiff in any greater sum than the use of said spring would have been worth to the plaintiff from the time said spring was sunk by reason of mining on the said J. A. Dotson tract of land and the time that the mining on the said adjacent lands to said Dotson tract would have sunk or dried up said spring.

The court refused to give this instruction as offered but gave it as modified in the following manner:

The court instructs the jury that the defendant has the legal right to mine all the coal and pull all the pillars without leaving any support whatever under all of the lands adjacent to and binding on the *plaintiff's land in so far as this is affected on the* south and west thereof except within five feet along the division line thereof; and if, in so doing, the surface of the land above the coal vein so mined is broken and caused the water which had theretofore been flowing on the said J. A. Dotson tract to cease flowing thereon, and that by reason thereof the spring in question on the said J. A. Dotson tract of land has been dried up, then, and in that event, it is the duty of the jury to find for the defendant; and they are further told that if they cannot decide from a preponderance of the evidence whether the mining of the coal by the defendant on the lands adjacent to and binding on *plaintiff's* land, on the south and west thereof five feet or more from the division line thereof caused the spring in question to dry up, or whether the same was caused to dry up by mining on the said J. A. Dotson tract of land, then it is the duty of the jury, in that event, to find for the defendant; and the court further tells the jury that the burden is on the plaintiff in this case to show by a preponderance of the evidence that the spring in question on the J. A. Dotson tract of land was not dried up by reason of mining on the lands adjacent to said tract lying on the south and west thereof and five feet or more from the division line thereof before they can find for the plaintiff in any sum whatever.

And the jury are further told that although they may believe that the spring on the said J. A. Dotson tract of land was dried up by reason of mining on the said J. A. Dotson tract of land without leaving sufficient supports to sustain the surface of said tract of

land intact above the coal vein so mined, yet if they further believe that afterwards the mining of the coal by the defendant on the lands adjacent to the said J. A. Dotson tract on the south and west thereof and five feet or more from the division line thereof would have caused said spring to dry up had sufficient support been left on the said J. A. Dotson tract of land to sustain the surface of the said land above said coal vein intact, the jury cannot find damages for the plaintiff in any greater sum than the use of said spring would have been worth to the plaintiff from the time said spring was sunk by reason of mining on the said J. A. Dotson tract of land and at the time that the mining on the said adjacent lands to said tract would have sunk or dried up said spring.

On motion of the defendant the court also gave the following instruction:

The court instructs the jury that even if they should believe from the evidence that defendant is liable for the sinking of the spring in question, it was the duty of the plaintiff at the time thereof and since, to minimize his loss in any reasonable way open to him; and if you further believe from the evidence that it was practicable for plaintiff at the time said spring was sunk, or any time since, to have re-arranged his fences and provided a way to water for his stock, and thereby reduce his loss, it was his duty to do so.

*Vicars & Perry* and *E. M. Fulton*, for the plaintiff in error.

*Bond & Bruce*, for the defendant in error.

CARDWELL, J., delivered the opinion of the court.

This action of trespass was instituted by W. H. Hamilton against the Stonegap Colliery Company, a corporation, to recover damages to the amount of $5,000 alleged to have resulted from the mining and removal of the coal under the plaintiff's lands by the defendant, without leaving sufficient natural or artificial supports to prevent subsidence of the surface of the lands.

The declaration contains but one count, and plaintiff's cause of action as set out is that, by reason of the alleged mining out of the coal in, under and upon two certain tracts of land, the surface of which was owned by the plaintiff, to-wit: the J. A. Dotson tract and that part of a tract conveyed to the plaintiff by Hansford Gilliam which lies west of a certain road, called the Birchfield road, and the failure of the defendant, in so mining and removing said coal, to leave blocks, stumps or pillars of coal, or some other adequate or sufficient means of support for said overlying surface, the strata of rock overlying the said coal were cracked and broken, and large bodies of it fell and large cracks, fissures and holes were left in said overlying surface, by reason whereof the surface of said land had been left unsafe and of little value for agricultural or other purposes, and all of the springs, streams and other water supplying the said lands were drained, sunken, diverted and wholly destroyed, etc.

The defendant filed its demurrer to the declaration, which the court overruled, and at the trial of the case upon its merits there was a verdict for the plaintiff, assessing his damages at the sum of $1,000, which the court refused to set aside and entered judgment thereon, to which judgment this writ of error was awarded the defendant.

The first assignment of error is to the action of the

court in overruling the defendant's demurrer to the declaration, but the record does not show that any such ruling was made in the case, though it does show that the demurrer in writing was filed.    In these circumstances the established rule is that the demurrer is to be regarded as overruled.    *East* v. *Hyde*, 112 Va. 92, 70 S. E. 508, and authorities cited.

We are of opinion, however, that the demurrer should have been overruled.    The best pleading, as this court has repeatedly held, is that which states facts and not conclusions of law, leaving no need for conjecture as to any fact upon which the right of recovery is based. Section 3246 of the Code of 1904 provides that no action shall abate for want of form, where the declaration sets forth sufficient matter of substance for the court to proceed upon the merits of the cause; and section 3272 provides that on a demurrer (unless it be to a plea in abatement) the court shall not regard any defect or imperfection in the declaration or pleadings, whether it has been deemed mispleading or insufficient pleading or not, unless there be omitted something so essential to the action or defense that judgment, according to law and the very right of the case, cannot be given.

In the instant case the words in the declaration, "of a plea of trespass," without stating whether it was *trespass on the case*, or *trespass vi et armis*, could not affect the real character of the declaration, which is really, by the facts alleged, a declaration in trespass on the case, setting forth sufficient matter of substance for the court to proceed upon the merits of the cause.

The distinction between trespass *vi et armis* and trespass on the case is very clearly drawn in 4 Min. Inst. p. 436, and the distinction between the two actions appears to be so nice and useless that both the courts

and the legislatures have manifested a decided purpose to abolish the distinction and adhere to the rule declared in the statutes, *supra*, and as it was laid down in the early case of *Mowry* v. *Miller*, 3 Leigh (30 Va.) 561, 24 Am. Dec. 680, to-wit: that on general demurrer to a declaration the court looks always to the substantial meaning of its allegations to ascertain whether it states a good cause of action.

In the more recent cases this rule, stated in somewhat different phraseology, though in substance the same, is declared to be that a declaration is sufficient if it informs the defendant of the nature of the demand made against him, and states such facts as will enable the court to say that if the facts are proved, as alleged, they establish a good cause of action. *Va., &c. Wheel Co.* v. *Harris*, 103 Va. 708, 49 S. E., 991, and authorities cited.

By successive conveyances the plaintiff, prior to the grievances for which he sues in this action became the owner of the surface of two tracts of land—the J. A. Dotson tract and the Hansford Gilliam tract—formerly constituting one tract, and the several conveyances which form the chain of title in the plaintiff to the surface of each tract, recognized and preserved in and as belonging to O. M. Vicars the benefits of the following reservation and exception contained in a deed from said O. M. Vicars and wife to Milburn Gilliam, dated the 16th day of May, 1901, to-wit: "But there is excepted and reserved from the operation of this conveyance all the coal in, under and upon said tract of land, and the right and privileges of the said parties of the first part, their heirs and assigns to enter upon said tract of land and excavate and mine, prepare for market and remove said coal with all the usual mining privileges . ."

In the bill of particulars filed by the plaintiff with his declaration he claimed "that the spring on the land known as the J. A. Dotson land was drained and destroyed in the summer of 1910; and that the spring on the tract known as the Hansford Gilliam land was drained before plaintiff purchased the said tract of land."

At the same term of the court—January, 1913—the defendant filed in writing its several grounds of defense to the action, which, besides the defenses under the plea of the general issue and the three and five years statutes of limitations, were that the defendant, in mining the coal under the said J. A. Dotson tract of land, did not exceed its rights under the grant or reservation of the coal under which said mining was done; that the alleged loss of the spring on the J. A. Dotson tract of land did not occur by reason of any mining done by the defendant at any time of the coal in and under the said land; and that in any mining done by the defendant of the coal under the said J. A. Dotson tract, the defendant never interfered with any water upon the same, unless it be subterranean waters, or mere percolating veins thereof, oozing or percolating through the soil and sub-strata of the land or natural cracks in the stone or earth over said coal, or other causes incident to the mining of said coal, for which the defendant was not liable.

During the progress of the trial many exceptions were taken by the defendant to the rulings of the court in the admission and rejection of evidence, giving, refusing or modifying instructions, and to its refusal to set aside the verdict because contrary to the law and the evidence. These exceptions, twenty-four in number, are made the basis of twenty-three of the

twenty-four assignments of error contained in the defendant's petition for this writ of error, and it would be impossible to consider these assignments *seriatim* or at length in this opinion—indeed, it is not necessary to do so, as practically all of them must stand or fall upon whether or not the court, in its ruling complained of, took a correct view of the law with respect to the rights of the parties upon the facts which the evidence tended to prove.

It appears that the defendant, as the lessee of O. M. Vicars and one J. J. Kelly, Jr., for many years prior to June, 1910, had been mining coal under the Hansford Gilliam and J. A. Dotson tracts of land, and also under several adjoining tracts, and the mining was continued on the Gilliam and Dotson tracts after June 30, 1910, in fact until into the year 1913. The spring on the Gilliam tract, it appears, went dry not later than in the spring of 1906, the coal under which and for 250 feet from it was not taken out till much later; and the spring on the Dotson tract went dry about the first of June, 1910, at which time, as defendant claims, there had been left three pillars of coal in the vicinity thereof and under the same, one 50 feet long by 20 feet wide, another (directly under the spring) 30 by 30, another 30 by 70 and still another 50 by 200 feet.

It is to be observed from his declaration and the bill of particulars filed therewith, that the plaintiff rests his claim to damages in this action upon the failure of the defendant, in mining and removing the coal in question, to leave adequate or sufficient means of support for the overlying surface thereof, and that by reason of such failure or neglect, the stratum of rock, etc., overlying the coal was cracked and holes were left in said overlying surface, causing it to be un-

safe and of little value for agricultural or other pur-
poses, and causing all of the springs, streams and other
water supplying the said lands to be drained, sunken,
diverted and wholly destroyed.

There is no evidence in the record tending to prove
that the cracks, gaps and fissures in the surface over-
lying the coal, alleged to have been caused by the min-
ing out of the coal, had extended through to the top
or face of this surface, so that the drying up of the spring
on the Dotson tract and the resultant injuries to plain-
tiff's lands, the Dotson and Gilliam tracts, by reason
of the loss of the water theretofore supplied by the
spring on the Dotson tract were the only damages that
the evidence tended to prove. Of course the plaintiff
contended that the drying up of the spring on the Dot-
son tract and the resultant injuries to that tract and
the Gilliam tract were caused by the defendant mining
out the underlying coal in disregard of his right to
subjacent support of the overlying surface. Whether
the evidence and the inferences to be drawn therefrom
sustained this contention involved questions of fact
for determination by the jury under proper instructions
from the court as to the law applicable to the case.

This brings us, though rather in inverse order of the
assignments of error, to assignments 19 to 23 inclusive,
relating to the rulings of the trial court in giving, re-
fusing and modifying instructions.

The defendant, plaintiff in error here, does not, as
its contention is understood by us, controvert the doc-
trine of subjacent support as established by the courts
of both England and America, and sustained by prac-
tically all of the text-writers in both countries, resting
the doctrine upon the ground that there were the same
reasons for it that there were to maintain the right to

lateral support which had been determined previously to the early case of *Humphries* v. *Brogden*, 12 Q. B. 739, 64 Eng. Com. L. R. 739; *Stephenson* v. *Wallace*, 27 Gratt. 77; but the contention is that the court's rulings with respect to the instructions given, refused and modified in this case have erroneously extended the doctrine of subjacent support farther in protecting subterranean streams and percolating waters than the doctrine of adjacent support goes.

It is further urged by the learned counsel for the defendant that the terms used in the conveyance in this case, wherein the coal was granted, reserved or excepted, together with the "usual mining privileges," the right to enter upon the lands "above described and excavate, mine, prepare for market, and remove said coal; together with all the usual mining privileges," and the rights "to pass to and under said land for the purpose of mining and removing any other coal of the party of the second part, his heirs, assigns or vendees, which he now owns or may hereafter acquire, on or under any other land," are the same terms employed in the deed under consideration in the case of *Griffin* v. *Fairmont Coal Co.*, 59 W. Va. p. 480, 2 L. R. A. 1115, 53 S. E. 24, where, by a divided court, it was held: "The vendor of land may sell and convey his coal, and grant to the vendee the right to enter upon and under said land, and to mine, excavate, and remove all the coal purchased and paid for by him; and, if the removal of the coal necessarily causes the surface to subside or break, the grantor cannot be heard to complain thereof.

"Where a deed conveys the coal under a tract of land, together with the right to enter upon and under said land, and to mine, excavate, and remove all of it,

there is no implied reservation in such an instrument that the grantee must leave enough coal to support the surface in its original position.''

The opinion in that case by Cox, J., in which the majority of the court concurred, adopts in part an opinion written by Judge Mason who decided the case in the circuit court, but expressly states that while the court agrees with the conclusion of Judge Mason and with much of his reasoning, they disagreed with him in two important particulars, namely: (1) "We do not agree that the additional grant contained in the deed of the right to enter upon and under said land and to mine, excavate and remove *all* the coal, adds nothing to the legal effect of the deed.'' (2) "We in no sense question the doctrine or right of subjacent support in a case where the surface and subjacent estate are owned by different persons, and the right of support has *in no way been parted with or waived by the surface owner.*'' This comment was doubtless deemed necessary by reason of the fact that in the opinion by Judge Mason he took the view that the word "all" in the clause which gave the defendant the right to enter upon the land and remove "all" the coal was superfluous and added nothing to the force of the conveyance, for the reason that the right of subjacent support can arise only by express agreement in the instrument creating the severance, and does not exist as a natural right. The opinion of the appellate court, therefore, recognizes the right of the surface owner to subjacent support until he parts with or waives it, and concedes that the plaintiff in that case would have been entitled to support of his surface land, but for the language of the granting clause in the conveyance under which he claimed being sufficient

to waive that right, and the court's decision is rested largely upon the grounds stated in the opinion by Cox, J., as follows:

1. "I cannot see how, against every rule of construction, where a deed has been made by the owner of the fee granting in express terms all the subjacent strata or estate, that the right of subjacent support may be based upon the ground that there is a presumption or implied reservation by such deed, in which there is no express limitation, reservation or exception, and in derogation of the express terms of the grant of so much of the subjacent strata or estate, to the extent of all, if necessary, to support the overlying surface."

2. "The plaintiff granted all the coal, and the ownership of the surface and of the underlying coal was severed, creating a separate estate in each. If the deed said nothing more the owner of each would be bound by the rule *sic utere*, etc. If the deed said nothing more, I would, without hesitation, hold that the owner of the surface would be entitled to support, and that the owner of the coal could not so use it, by removing all of it, as to injure the surface. The deed does not stop with the grant of all the coal. It contains the express additional grant on the part of the plaintiff to the grantee of the right to enter upon and under said land, and to mine, excavate and remove *all* of said coal."

The opinion further says: "I think there is a vast difference between a grant of all the coal simply and a grant of all the coal with the right to enter upon and under the land and remove *all* of it. Without the right to remove *all*, the owner of the coal may not do so, if to do so would injure the surface."

The argument followed in the opinion throughout is

that the grantor having sold the coal and received the pay for it, should not be heard to claim a right not expressly reserved; and that having granted the defendant the further right to *remove all* the coal he cannot say that a part of it must be left for surface support.

Unquestionably the ground upon which the court's decision in the case rested was that the word "all" in the grant of the coal, together with the right to enter, etc., and "remove *all* of it," gave the conveyance under consideration additional force, for the opinion by Cox, J., which is made the court's opinion, says: "I have no quarrel with the doctrine of subjacent support, when it has not been parted with, applicable where the surface and subjacent estate in the same land are owned by different persons.   I do not condemn or question what I deem the best cases and text-books expounding the doctrine."

Even if it could be conceded in the instant case that the terms employed in the conveyance under consideration are the same as those employed in the conveyance construed in the case we have just cited and quoted from, we could not follow either the reasoning or the ruling in that case, for which ruling the court did not cite a single well considered case as sustaining it.   On the other hand the decided cases to which we have adverted, both English and American, and the text-books written by the most eminent law writers, concur in holding that the right of subjacent support is not waived by the sale of all the coal with the right to mine and remove it, or the sale of the surface reserving the coal with the right to mine and remove it. Not only so, but the decision of the court in *Griffin* v. *Fairmont Coal Co., supra,* based as the opinion indi-

cates upon the force of the word "all" in the latter part of the conveyance considered, is in direct conflict with every decision that we have been able to examine, which construed a deed that vested in a person *all* the coal under a tract of land with the right to remove it. The following cases are in point: *Wilms* v. *Jess*, 94 Ill. 464, 34 Am. Dec. 242; *Youghiogheny R. Coal Co.* v. *Hopkins*, 198 Pa. 343, 48 Atl. 19; *Berkey* v. *Berwind White Coal Co.*, 220 Pa. 65, 69 Atl. 329, 16 L. R. A. (N. S.) 851; *Weaver* v. *Berwind White Coal Co.*, 216 Pa. 195, 65 Atl. 545; *Catron* v. *South Butte Min. Co.*, 181 Fed. 841, 104 C. C. A. 405.

In the last named case the court says: "And it is well settled that the grant of the surface with a reservation of the minerals and the right to extract the same does not permit the destruction of the surface, unless the right to do so has been expressed in terms so plain as to admit of no doubt."

In 2 Devlin on Real Estate, sec. 979, the author, after stating that a reservation to create an estate must use apt words, and that it is to be construed most strongly against the grantor, says: "A reservation of all minerals or of the right of mining must always respect the surface rights of support. The surface is not to be destroyed without some additional authority."

The rule is stated in 1 Ruling Case Law, at p. 396 thus: "While the presumption is in favor of the right to support, no particular words are necessary to show its surrender.

"But an absolute right to surface support is not to be taken away by mere implication from language which does not necessarily import such a result. Therefore a grant of minerals by the owner of the soil

does not give to the grantee the right to allow the surface to fall in.

"And likewise, when the owner grants the surface of the land, reserving to himself the right to the minerals, he cannot in excavating for the minerals, let down the surface of the soil, unless the reservation is so framed as to clearly give the grantor the right to let down the soil."

In 27 Cyc. pp. 789-90, citing a large number of authorities to support the text, it is said, that where one grants the minerals under the surface with the privilege of mining such minerals, the support of the surface is a part of the estate reserved in the grantor; while on the other hand if one sells the surface reserving the minerals, the grantor in removing the minerals reserved, must leave or provide sufficient support for the surface to prevent its subsidence, unless, in either case, there is some additional statutory or unequivocal contract authority therefor. See also *Williams* v. *Hay*, 120 Pa. 485, 6 Am. St. 379; *Collins* v. *Gleason*, 140 Iowa, 114, 115 N. W. 497, 118 N. W. 36, 18 L. R. A. (N. S.) 736; Blanchard & Weeks' Notes to *Jones* v. *Wagner*, Leading Cases on Mines, p. 617; Barringer & Adams on Law on Mines, p. 676; 18 Am. & Eng. Enc. L. 557; Cooley on Torts, p. 707; *Youghiogheny R. Coal Co.* v. *Alleghany Natl. Bank*, 211 Pa. 319, 60 Atl. 924, 69 L. R. A. 637.

In the last named case the direct question was presented in the determination of the rights of the parties under the following provision in their contract: "The said parties of the first part reserve all of the non-worked six-foot vein of stone coal, also the right and privilege for themselves, their heirs and assigns of digging, mining and carrying away said stone coal."

In *Wilm* v. *Jess, supra,* the conveyance of the surface not only excepted *all* the coal, but reserved the right to remove *all* the coal, but the court held: "The rule is well settled, when one owning the whole fee grants the minerals, reserving the surface to himself, his grantee is entitled only to so much of the minerals as he can get without injury to the superincumbent soil." Citing a number of authorities. The opinion in that case also held that where a land owner sells the surface, reserving to himself the minerals with power to get them, he must, if he intends to have power to get them in a way which will destroy the surface, frame the reservation in such way as to show clearly that he is intended to have that power.

In *Horner* v. *Watson,* 79 Pa. 242, 21 Am. St. Rep. 55, the court construed a deed similar in its provisions to the one here under consideration and held that the surface owner had the right of support, the opinion saying: "When A grants B a tract of land reserving the minerals under it, the legal presumption is that B shall have and enjoy the exclusive and uninterrupted use of the surface, but if A may, notwithstanding, under the plea of the general custom, dig out the foundations of the land and let down the surface, or render it so dangerous that it cannot be used, it is clear that he may thus destroy his own grant and invalidate the rights with which the law clothes his own vendee." See also *Coleman* v. *Chadwick,* 80 Pa. 81, 21 Am. Rep. 93.

We have been cited to no case that approves of the decision in *Griffin* v. *Fairmont Coal Co., supra,* but have been cited to a number of more recent decision, which disapprove of that decision, all of which are in line with the dissenting opinion in the case by Poffenbarger, J.,

which says: "I am unable to concur in the view of my associates in this case, because I do not think it has been, or can be, reached without violating sound and well settled principles, and especially rules governing the interpretation and construction of deeds and contracts. The opinion avowedly disapproves and repudiates vital principles of the law of subjacent and lateral support, declared by every American court that has ever applied that law to a deed or contract, by which the surface of land has been separated in title as well as the decisions of the English courts. It expressly condemns by name the decisions of Alabama, Illinois, Indiana, Iowa, New York, Pennsylvania, and those of Ohio, and perhaps other States without express reference to them. It demolishes at one fell blow the entire system of English and American law upon the subject." *Walsh* v. *Kansas F. Co.*, 91 Kan. 310, 137 Pac. 941, 50 L. R. A. (N. S.) 686; *Paul* v. *Island C. Co.*, (Ind.), 44 Ind. App. 218, 88 N. E. 959; *Sloss & Sheffield S., &c. Co.* v. *Sampson*, 158 Ala., 590, 40 So. 493; and *Piedmont, &c. Coal Co.* v. *Kearney,* 114 Md. 496, 79 Atl. 1013, where the court, construing a deed which, as in the instant case, conveyed the surface and reversed "all the coal and other minerals" together with the right to mine and remove said coal and minerals," held that the right to subjacent support was not waived by the surface owner, and says: "Even in *Griffin* v. *Fairmont Coal Co.*, 59 W. Va. 480, [53 S. E. 24, 2 L. R. A. (N. S.) 1115], etc., which has gone as far in sustaining the right of the owner of the minerals to remove all of them as any decision we have found, the general doctrine is recognized." See also *Collins* v. *Gleason Coal Co.*, *supra*, Green Bag.

June, 1906; Barringer & Adams on L. of Mines & Mining, p. 64.

A conveyance or the reservation of "all the coal" with the right to mine it, is, as was said, in the dissenting opinion in *Griffin* v. *Fairmont Coal Co.*, *supra*, one and the same thing. "No talismanic influence is to be attributed to the word 'all.' The coal under a tract of land is precisely the same as 'all the coal,' and to attribute to the word 'all' any intensive force is a mere verbal criticism without effect, weight or influence. It is the sticking in the bark which always misses the marrow."

The reasoning running through all the authorities to which we have referred and to which very many more could be added is that when a grantor, as in this case, sells the surface of the land, he knows that the use of it for farming and other purposes is contemplated and assents thereto. He also is presumed to know that when all the coal is removed the overlying surface will sink unless supported, and if he desires to reserve rights inconsistent with the full enjoyment of the surface, it is his duty to reserve those rights by clear and unequivocal language. It is hardly to be supposed that either the grantor or the grantee in the conveyance we have under consideration for a moment contemplated the reservation of a right which would enable the grantor to totally destroy the subject matter of the conveyance, or at least render it largely useless.

Unquestionably, the dominant intent of the deed, and the purpose for which it was executed is that the grantee shall have the surface, with the right to its use and enjoyment *modo et forma*, while the grantor still owned the coal, with the right to mine and market it, but in the enjoyment of their respective rights each

was to regard the right of the other, as the maxim of
the law "*sic utere tuo ut alienum non laedas*" applies.
The use of the words, "enter upon said tract of land
and excavate and mine, prepare for market and remove
said coal" is not to be construed as defining, or even
an attempt to define, the manner in which the right is
to be exercised, or as showing any intention to deprive
the grantee, the owner of the surface, of an important
right upon which the enjoyment of his property de-
pends.   Nor (as we have already seen) does the use
of the words, "all the coal," have that effect.

It is to be observed that there was a diversion in the
chain of title to the surface of the Dotson and the
Gilliam tracts as a whole, which had reunited in the
plaintiff before the sinking or drying up of the spring
on the Dotson tract, and the claim plaintiff is making
in this action is to damages which resulted not only
to the Dotson land, but for damages resulting to the
Gilliam land from the loss of the spring on the Dotson
land.

There was evidence tending to prove damage to the
Dotson land by reason of the drying up of the spring
thereon, and counsel for the plaintiff do not contend
that he is entitled to damages that resulted from defend-
ant's operating its mine, driving the regular entries,
rooms and other usual excavations that it had a right to
make, but seeks reparation for the unlawful, wrongful
and injurious act of the defendant in withdrawing
the surface supports to which the plaintiff was entitled,
which it had no right to do; so that the crucial question
of fact submitted to the jury for determination under
the instructions of the court was whether or not the
sinking or drying up of the spring on the Dotson land
was caused by the failure of the defendant in mining

out its coal, "to leave blocks, stumps or pillars of coal, or some other adequate or sufficient means of support for the overlying surface."

Plaintiff's instruction No. 1, to which the defendant excepted, is as follows:

"The court instructs the jury that under the conveyances introduced in evidence in this case, it was the duty of the defendant in mining and removing the coal under the tract of land known as the J. A. Dotson tract, to leave sufficient pillars, props or other means of support to prevent the strata overlying the coal from breaking and falling; and if they believe from the preponderance of the evidence that the defendant mined the coal in and under the plaintiff's tract of land known as the Dotson tract, without leaving sufficient pillars, props or other means of support to prevent the strata overlying said coal from breaking and falling, and that as a result thereof the said strata was broken and the spring on the J. A. Dotson tract thereby drained and destroyed, they should find for the plaintiff such damages as he has sustained by reason of the draining of said spring."

We have already disposed of the contention of the defendant that the doctrine announced in the case of *Griffin* v. *Fairmont C. Co. supra*, applies and controls this case. The further objection urged against instruction No. 1 is that it erroneously holds that the surface of a tract of land, which must be protected at all hazards, extends down to the very top of the underlying coal, including all strata over it, even slate and rock, that must be pulled down if accident to life and limb is to be avoided, whereas "surface" means that portion of the land which is or may be used for agricultural purposes. In other words, this contention, as we

understand it, is that through the alleged failure of
the defendant to leave blocks, stumps or pillars of
coal, or some other adequate or sufficient means of
support for the overlying surface, the strata of rock
overlying the coal were cracked and broken, large
bodies of it fell, and large cracks, fissures and holes
were left in the overlying strata, causing the sinking
or drying up of the spring on the Dotson land; and
that since such failure or neglect of the defendant did
not destroy or damage the use of the surface for agricul-
tural purposes—that is, for plowing, grazing, etc.,—
plaintiff is not entitled to a recovery of damages in
this action, even though the draining of the spring
was caused by the failure of the defendant to provide
supports and props for the strata overlying the soil.

Authorities are cited which say that the word "sur-
face" when specifically used as a subject of conveyance
means that portion of the land which is or may be
used for agricultural purposes, but its meaning in any
particular case must necessarily depend upon the in-
tention of the parties as gathered from the language
of the deed and the purpose of the conveyance, and
according to the authorities the word "surface" may
mean either the mere superficial or geometrical surface,
the part of the soil used for agricultural purposes, or
all of the strata except the minerals.

In *Yandes* v. *Wright*, 66 Ind. 319, 32 Am. Rep. 109,
where the word "surface" was used in a conveyance
creating a severance, the opinion of the court says:
"It should be noticed through the cases above cited
that the word surface, as used in the books, means not
merely the geometrical superficies without thickness,
but includes whatever earth, soil or land is above and
superincumbent upon the mine."   See also *Kansas*

*City N. W. R. Co.* v. *Schwake*, 70 Kan. 141, 78 Pac. 431, 3 Ann. Cas. 118, 68 L. R. A. 679; 4 Words & Phrases (2nd Ser.), p. 804; *Dolan* v. *Dolan*, 50 W. Va. 76, 73 S. E. 90, Ann. Cas. 1913 D., 125.

The authorities recognize that mining must interfere more or less with those subterranean streams and percolations of water which appear upon the surface as springs, and that to hold the owner of the substrata accountable for damages for their disturbance would be in effect to say that he could have no use of his minerals, for without interfering to some extent with such waters mining would be impossible; but they also recognize that there is a difference between water courses on the surface and those which run underground, and hold that the distinction does not authorize neighboring proprietors to disregard the necessities of each other's condition in respect to the latter. "It is manifest that valuable rights may exist in both; and it is indisputable that whenever they do exist they must be protected by law." *Wheatley* v. *Baugh*, 25 Pa. 528, 64 Am. Lec. 721. *Horner* v. *Watson*, 79 Penn. St. 242, 21 Am. Rep. 55.

In the last named case the court, citing a number of autorities, held that the surface owner having the right to subjacent support, the defendant had no right to withdraw the pillars in its mine and drain the waters above, and if it did so, it would be liable for the wrongful act, regardless of custom or negligence.

In *Gumbert* v. *Kilgore*, 6 Cent. Rep. 406, it was pointedly held: "The owner of the coal is liable to the surface owner if a spring is ruined through failure to support the surface properly, but not where the injury

to the spring is caused by the mining operations when the support of the surface is sufficient."

To the same effect is section 939, 3 Farnham on Waters, where, after stating that "the owner of the minerals has the right to use all waters found percolating therein, although the effect is to cut off the supply of water to the surface springs," it is said: "But where the surface and the mine belong to different owners, the owner of the mine has no right to carry on his operations in such a way as to remove the surface support, so that, if he does so, and a spring is destroyed as a result of his wrongful act, he is liable." See also 1 Barringer & Adams on L. of Mines, *supra,* p. 678; *Hart* v. *Jamaica, &c. Corporation,* 133 Mass. 489.

As observed, the plaintiff in this case is not claiming any damages that resulted from defendant driving the regular entries, rooms and other usual excavations that it had a right to make in removing its coal underlying the plaintiff's surface land, but is seeking reparation of an injury alleged to have been sustained by the unlawful and wrongful act of the defendant in withdrawing the surface support to which plaintiff was entitled; and plaintiff's instruction No. 1, we think, fairly submitted to the jury the question whether or not, upon a preponderance of the evidence, the defendant in mining the coal in and under plaintiff's Dotson tract of land failed to leave sufficient pillars, props or other means of support to prevent the strata overlying said coal from breaking and falling, and as a result the said strata were so broken and caused the spring on the Dotson tract to be drained and destroyed.

Plaintiff's instruction No. 2, to which defendant also excepted, told the jury that if they believed from the evidence that the plaintiff was entitled to recover,

under instruction No. 1, they might consider the damages, if any, resulting to both the Dotson and Gilliam tracts from the draining of the spring on the Dotson tract, etc.

That part of the instruction relating to damages resulting to the Gilliam tract was erroneous and should not have been given, since the drying up of the spring on the Dotson tract was the only damage that the evidence tended to prove. The same error was repeated in plaintiff's instruction No. 3, and the further error committed in instructing the jury that in estimating damages they might consider, not only damage, if any, resulting from the drying up of the spring on the Dotson land, but the decrease, if any, in the value of the plaintiff's land for residence and other purposes. The latter part of the instruction, which is erroneous, is predicated upon testimony erroneously admitted by the court over the objection of the defendant, that plaintiff's land was close enough to the town of Wise to be divided into lots and tracts and sold for homes. Clearly, such damage was too remote and speculative to be proper for the consideration of the jury upon any issue in the case.

Plaintiff's instructions Nos. 4 and 5, which appear in the official report of the case, were, for the reasons stated in considering plaintiff's instruction No. 1, properly given to the jury.

The court having given to the jury plaintiff's instructions Nos. 1, 4 and 5, it did not err in refusing an instruction asked by the defendant which sought to have the jury told "that even though they should believe from the evidence that the spring of the plaintiff on the J. A. Dotson tract of land was sunk or caused to go dry by reason of the mining of the coal thereunder,

if they further believe that said spring came from un-defined subterranean streams or percolations of water, and that defendant did its mining thereunder in the usual and ordinary way, and that in consequence of so doing, the water ceased to said spring and it sunk or became dry, defendant is not liable therefor and the jury should so find, and this is true even though the jury shall believe that the defendant did not in mining out the coal under the J. A. Dotson tract, leave suf-ficient pillars or props to uphold and keep intact the strata overlying the vein of coal so mined."

The defendant, however, asked for the same in-struction, omitting the latter part of it, namely, the words "and this is true even though the jury shall believe that the defendant did not in mining out the coal under the J. A. Dotson tract, leave sufficient pillars or props to uphold and keep intact the strata overlying the vein of coal so mined," which the court refused, and this ruling, we think, was error, for the reasons already sufficiently stated in this opinion.

The defendant asked another and a very lengthy instruction, relating to its rights in mining out the coal under the lands adjacent to and binding on the J. A. Dotson tract of land, which instruction the court gave in a modified form, and this ruling is assigned as error. With respect to this instruction and its modification by the court, we deem it only necessary to say that the instruction as offered was well calculated to confuse the minds of the jurors and to mislead them, to the prejudice of the defendant, in their consideration and determination of the facts which the relevant testimony in the case tended to prove, and, therefore, the in-struction, even as modified, should not have been given.

The court permitted, over the objection of the defendant, the plaintiff and a witness for him to testify in reference to a crack in the surface of an adjoining track of land not owned by the plaintiff or mentioned in his declaration, and which was but recently discovered. This evidence was clearly irrelevant and immaterial to any issue in the case, in view of the fact that there was no testimony in the case tending to prove that the alleged crack extended into the plaintiff's land, or could have had any casual connection with the injury of which plaintiff complains in his declaration and bill of particulars.

Assignments of error four to thirteen, inclusive, relate to the rulings of the court permitting certain witnesses for the plaintiff to testify, over defendant's objection, with respect to damage to the Gilliam tract by reason of the spring on the Dotson tract going dry. As observed, the spring on the Gilliam tract was dry at the time plaintiff bought it, and as the defendant contends, he had no right of action for this. 4 Min. Inst., Pt. 1, p. 452; *Com'th ex rel, &c.* v. *Wampler,* 104 Va. 337, 51 S. E. 737, 1 L. R. A. (N. S.) 149, 113 Ann. St. Rep. 1039, 7 Ann. Cas. 422. But the plaintiff having become the owner of the surface of a contiguous boundary embracing both the Dotson and Gilliam tracts, and before the diversion of the spring on the Dotson tract, he undoubtedly had the right to the use of the water from that spring on any part of his land, and if the defendant unlawfully and wrongfully destroyed the said spring, evidence of resulting damages, if any, to the Gilliam land was competent and relevant evidence for the consideration of the jury in ascertaining the damages, if any, that plaintiff should recover. Upon examination of the testimony given by the wit-

nesses just referred to, we are unable to say that the testimony they gave was irrelevant, and, therefore, improper, except to the extent that the plaintiff himself was asked and permitted to answer as to whether or not he would have bought the Gilliam tract if he had not owned the Dotson tract, which had water on it, the answer of the plaintiff being, "Not at that price." It is difficult to see what legitimate bearing plaintiff's reasons for purchasing the Gilliam land or that induced him to purchase it, or the price he paid for it could have had upon any issue in this case; therefore, this testimony given by him should have been excluded.

Assignments 15, 16 and 17 relate to the action of the court in permitting certain questions to be propounded to plaintiff's witness, Malcolm Smith, and requiring him to answer the same. These questions sought the witness' opinion as an expert, and all we deem it necessary to say with respect to the questions is that the hypothesis assumed in them was not supported by any evidence in the case, and, therefore, the answers of the witness to the questions, which were rather vague and indefinite, were well calculated to confuse and mislead the jury to the prejudice of the defendant.

Assignment of error 18 relates to the refusal of the court to allow defendant's witness, Cheney, to testify that if the defendant had been compelled to leave enough coal in said mines to support the roof and all overlying strata, defendant would have been compelled to leave all the coal in place, as it would not have been safe to take out any of the coal, and the same would be the effect upon all the coal mines in that region. The court properly permitted this witness and others to testify that a coal operator could not tell beforehand

where he might encounter water and thereby, in mining the coal, affect the flow of a spring at the surface, but the defendant, by the questions propounded to the witness (as the expected answers appearing in the record show), sought to obtain testimony from him in support of its contention that in that region it would be impossible, although the mining be done according to the usages and customs of mining operations, to mine any coal without more or less of the slate and other strata overlying the same falling in, the effect of which might be to interrupt or stop the flow of a spring at the surface; and that, therefore, the defendant, if it failed, as charged in the declaration in the case, to leave pillars of coal or some other adequate or sufficient means of support for plaintiff's overlying surface lands, resulting in the interruption and stoppage of the flow of water at the Dotson spring, violated no duty that the defendant owed to him in the mining and removal of the coal in and under his lands.  This testimony sought to be obtained from the witness was irrelevant to the issue in the case, and was, therefore, rightly excluded.

Assignment of error 19, relating to the action of the court in overruling defendant's motion that the jury be allowed a view of the premises, is without merit, since there is nothing in the record to take the case out of the control of the general rule that such motions are addressed to the sound discretion of the trial court, and the ruling of the trial court thereon will not be reversed by the appellate court, unless it appears from the record that a view was necessary to a just decision. *B. & O. R. Co.* v. *Polly Woods*, 14 Gratt. (55 Va.) 447.

The remaining assignment of error relates to the refusal of the court to set aside the verdict of the jury

and grant the defendant a new trial. Having, be-
cause of the errors pointed out, reached the conclusion
that the judgment complained of should be reversed,
the verdict of the jury set aside, and the cause remanded
for a new trial not in conflict with this opinion, it
is unnecessary for us to consider or express any opinion
with respect to the evidence certified in the record.

*Reversed.*