### FRANKLIN, Plaintiff, v. CALLICOAT, Defendants.

Common Pleas Court, Lawrence County.

No. 33427. Decided February 6, 1954.

O. E. Irish, Roy L. Henry, Ironton, for plaintiff,
Milton J. Andrews, Ironton, for defendants.

68

## OPINION

By EARHART, J.

This cause is before the court on the petition of the plaintiff, E. E. Franklin which consists of two causes of action.

The plaintiff alleges that he is the owner of certain mineral rights under real estate described in his petition, and located in Mason Township, Lawrence County, Ohio.

Plaintiff says that his mineral rights consist of all the coal, gas, oil, fireclay, building stone, and other minerals in and underlying the above described premises, and that the defendants Clifford Callicoat and Gladys Callicoat own or claim to own the surface to said premises. Plaintiff says that the deed conveying the mineral rights to him give him full and free right of ingress, egress and regress and right of way and other convenient and necessary rights and privileges upon and over the premises of the defendants for the purpose of mining, removing, developing, boring for, refining, and taking away coal, oil, gas or any other minerals located beneath the surface of said premises without being responsible in any way for damage or injury which might be done by reason of said mining, removing and taking of the minerals.

Plaintiff claims title to these premises by virtue of a deed recorded in Deed Record 79 page 415 of the Lawrence County, Ohio Deed Records and it is the claim of the plaintiff that on or about July 1953, he attempted to use the rights and privileges set forth above, but that defendant Clifford Callicoat ordered him off of the premises and refused to allow him to exercise these privileges.

Plaintiff says that he has reason to believe that unless Clifford Callicoat is enjoined by an order of this court, that he will do the plaintiff and plaintiff's agents bodily harm upon the plaintiff entering the above premises and exercising the rights and privileges acquired under the deed mentioned herein, and asks that a permanent injunction issue prohibiting defendant Clifford Callicoat from interfering with the plaintiff and the plaintiff's agents and employees in any manner whatsoever while the plaintiff is exercising his rights at mining, drilling and other privileges.

For his second cause of action, the plaintiff adapts the aver-

ments of his first cause of action as though rewritten herein, and says that in addition to the above mentioned mineral rights that plaintiff is the owner of approximately three thousand acres of mineral rights located in Lawrence County, Ohio, and that he is in the business of buying and selling mineral rights and in the business of developing mining rights, and that due to the threats of the defendant referred to herein, and also due to the claim of the defendant Clifford Callicoat that he himself owns the mineral rights along with his wife Gladys Callicoat. The plaintiff has been unable to sell for development purposes his entire mineral rights in Lawrence county and that by reason of the foregoing, he has been damaged in the sum of ten thousand dollars.

Defendants have filed an answer herein, in which they admit that the plaintiff is the owner of the minerals and mineral rights described in the plaintiff's petition, together with rights of ingress, egress and regress all as alleged in the plaintiff's petition. Defendants further admit that said rights were conveyed to the plaintiff by defendant's predecessor in title by deed recorded in Deed Book 79, page 415 of the Lawrence county, Ohio Deed Records.

It is the claim of the defendants that the deed referred to above was made in the year 1905 and that the strip mining of coal was unknown to the coal industry at the time, and was not contemplated by the parties to said deed, that plaintiff informed the defendants that he intended to strip the coal in said property and was informed by defendants that he could not enter upon the premises for that purpose. Defendants admit that plaintiff has the right to mine and remove coal, oil, or gas by methods contemplated by the parties when the original deed was made in 1905 conveying said minerals, but claim that the plaintiff is limited in his right to remove same by drift or shaft mining, but not by strip mining which would totally destroy defendant's surface rights in said land.

In answer to the plaintiff's second cause of action, defendants admit that plaintiff is in the business of buying and selling mineral rights and in the business of developing mineral rights and deny all other allegations contained therein, and asks that the petition of the plaintiff be dismissed.

These are the issues in this case.

The plaintiff claims title to said premises by reason of a special warranty deed from James C. Riley, trustee and O. E. Irish, trustee to E. E. Franklin dated March 6, 1952 and recorded in Deed Record 206, page 42 of the Lawrence County, Ohio Deed Records. This deed describes only the mineral rights referred to in the plaintiff's petition.

The plaintiff in this action, E E. Franklin, is the successor in title to said mineral rights of the Symnes Valley Coal Company which acquired the mineral rights from George Corn by deed dated February 16, 1905 and recorded in Deed Book 79, page 415 of the Lawrence county, Ohio Deed Records. The deed in so far as it pertains to the mineral rights reads as follows:

"Also the interest of the said grantor in all leases for oil, gas. or other minerals which may be held against said premises, together with full and free rights of ingress, egress. regress and of way and other necessary or convenient rights and privileges in, upon, and over the above described premises for the purpose of mining, removing, developing, boring for, refining and taking away said coal, oil, gas or any other minerals contained therein or thereon. Also the privilege of removing under and through the same any oil, gas, coal or other minerals which are owned by or which may be hereafter acquired by the said grantee herein without being in any way liable for damage or injury which may be done to the above described premises or to any waters or water course therein or thereon, by reason of the mining, removing and taking of said coal, oil, gas or other minerals. The said grantor further grants, bargains, sells and hereby conveys to the grantee herein so much of the surface of said real estate as may be required for machinery, buildings, waste dumps, railroads, switches, tramways, etc., but said grantee agrees to pay therefor an additional sum of $30.00 per acre for all of such surface so used or occupied by it. It is expressly understood and agreed as part of this conveyance that in case oil or gas pipes are laid across said premises, the same where ground is tillable are to be placed beneath the surface to a sufficient depth so as not to interfere with agricultural purposes and said grantee is to pay to the grantor herein twenty-five cents per lineal rod for all pipes so laid."

The sole question in this case is whether or not under the provisions recited above the plaintiff has the right to go upon the premises of the defendants for the purpose of strip mining coal from said premises or whether he is limited to the method of drift mining which was the method of mining at the time of the execution of this deed, to-wit, February 16, 1905.

There was much testimony introduced as to the methods of mining and it is undisputed that in 1905 strip mining methods were unknown to the coal industry in this county. The undisputed evidence is that strip mining methods were unknown to Lawrence county until approximately 1943 and that previous to 1943, the mining of coal was done by what is known as deep

mine or drift mine methods. It is further undisputed that the only profitable way to remove the coal at the present time is by strip mining methods and that if the plaintiff is restricted to drift mining or deep mining methods, the coal cannot be commercially produced at a profit.

I have considered carefully the authorities referred to in the briefs submitted by counsel for the plaintiff and the defendant, together with other authorities not mentioned in the briefs.

The only Ohio case which I find dealing with this subject is the case of U. S. Coal Company v. Wayne Coal Company reported at 12 Oh Ap 1. In this case, the plaintiff and defendants are owners of contiguous tracts of land and both are engaged in coal mining business. Plaintiff by deep mining methods and defendant by strip mining. Plaintiff seeks to enjoin the defendant from strip mining on the ground that it interferes with the lateral support of his premises and I notice in the court's opinion at page 4 the following:

"The mining of coal by stripping process has come into practice only within the past few years and could not be the minds of the parties when the deed was executed from Hublers to Rhodes and Bailey, for no such process was known at that time. It does not, however, follow that defendant has not a right to use that process or any other new or improved method of mining by machinery or otherwise which has come into use."

I note in the case of Moore v. Indian Camp Coal Company reported at 75 Oh St 493, that the Ohio courts have followed the theory that where the surface and minerals have been conveyed to separate owners, as in this case, the owner of the minerals has a fee in the land so long as there is coal beneath it, except that he may not remove the subjacent support of the owner of the surface. It is the contention of the defendants that the plaintiff has the right to remove the minerals underlying the premises, so long as he does not interfere with the subjacent support of the land of the defendants.

I find in 27 O. Jur., at page 93 the following:

"The rule is well settled that when one owning the whole fee grants the minerals reserving the surface to himself, his grantee will be entitled only to so much of the minerals as he can get without injury to the superincumbent soil unless the language of the instrument clearly imports it was the intention of the grantor to part with the right of subjacent support. The right of subjacent support extends only to the land in its natural state.

The surface owner is entitled to the absolute support of his land, not as an easement but as part of the free hold which is incident to the land in its natural state. It is a property right

and passes by a conveyance of the surface without an express grant to that effect, constituting a servitude on the lower estate. This obligation to protect the superincumbent soil exists where there is a conveyance of the surface reserving the minerals, or a grant of the minerals, without a conveyance of the surface. In either case, the presumption arises that the owner of the minerals does not, by removing them wholly or in part, intend to injure the owners of the soil above.

The owner of the surface may, of course, part with his right to surface support by his deed or covenant, or he may waive it. The intention, however, to dispense with subjacent support must be manifested by clear and unequivocal language in the deed or lease. For instance, it has been held that a sale of all the coal and other minerals under a tract of land is not a release in express terms, or by necessary implication of the right to surface support. On the other hand, it has been held that a deed conveying the surface estate, and reserving the right to mine coal thereunder, without reference to damage to former, reserves the right to mine coal without liability for want of support to the surface estate."

I find an annotation in 1 A. L. R. (2d) page 792 under the title of "Open pit mining," although the cases cited in this article are not in point, they nevertheless tend to show the attitude of the courts towards open pit mining or strip mining. I note at page 791 the following language:

"A reservation by a seller of land of minerals, oil and gas rights was held not to include the right to exploit the land for sand and gravel (Then the author cites a Louisiana case), where the recovering of sand and gravel would destroy the surface of the land which has been conveyed by the seller to a farmer who purchased the land for grazing and agricultural purposes, and the sellers have agreed to have due regard for the rights of the farmer as the owner of the land and there has been no discussion of the reservation of sand and gravel in negotiations between the parties. The court said, 'It would not be reasonable to construe the reservation of minerals and gas rights so as to embrace the right to exploit minerals which could not be removed from the land without destroying the surface for agricultural and grazing purposes. We do not think it can be seriously contended that it was in the contemplation of the farmer that he might at any time be deprived of the use of the land for the purpose for which he had purchased it by the mining of sand and gravel thereon, largely for the benefit of his vendors.'"

I find at page 792 a case more nearly like the one before the court and quote the following language:

"In Barker v. Mintz (1923) 73 Colo. 262, 215 P 534. in which a conveyance of land excepted and reserved all oil, coal and other minerals and further reserved the right to use so much of the said land as might be convenient or necessary for the convenient and proper operation of mines, it was held that although the owner of the minerals did not have the right to scrape off and remove the soil and gravel from above the coal on the land, the only practicable way to mine the coal, since the right to 'use' was not the right to destroy, the owner of the land would not be granted an injunction, which would destroy the property right of the owners of the minerals, where the land was used mainly for pasturage and the injury to the owner of the land could be compensated for by the payment of damages. After pointing out that no hard and fast rule could be laid down to govern all cases, each case depending somewhat on its own facts, the court said: 'And here it seems to us as inequitable to give a judgment against the defendant (the owner of the minerals) which destroys his property, as it would be to let him take out his coal without compensation to the plaintiff (the owner of the land) and so destroy hers. Is her property more sacred than his? No injunction should be granted contrary to the 'real justice of the case.' The land is wild and its present value, except for the coal, is only for pasturage, a very little of it for cultivation. The stripping destroys these values, but the fair and equitable way is so to treat the matter that each party will get the greatest amount of good with the least possible harm, and that is by allowing the defendant to take out his coal and pay the plaintiff for the damage he thereby does to her estate. He will then get the full value of his property and she will get the full value of hers. Is not that equity?' "

I note in 36 American Jurisprudence, page 402, paragraph 177 the following:

"The right to minerals when separated by grant or reservation in a deed is as much an estate in lands as the right to the surface of the same lands, and unless the language of the conveyance by which the minerals are acquired repels such construction, the mineral estate carries with it the right to use so much of the surface as may be reasonably necessary to reach and remove the minerals. This is an application of the maxim that when anything is granted all of the means of obtaining it and all of the fruits and effects of it are also granted. The implied right to occupy so much of the surface as may be needed to open and work the mines is not limited, but rather strengthened, by a special grant of certain timber and water privileges and of a right of way to and from the

mines. There are obvious degrees of necessity for the use of the surface in the conduct of subterranean mining operations, from the absolute necessity of sinking shafts or making other entrances to the minerals, to the practical necessities of business operations. The owner of the minerals obtains, either by express terms of the conveyance or by necessary implication therefrom, a right of entry or access to the minerals over and through the surface, and as against such purpose, the grantor does not hold the surface adversely. The grantee of minerals may not have the right to use the surface in aid of mining on adjoining premises."

I note the following at page 405, paragraph 184:

"The doctrine of subjacent support is applicable where the surface estate is, by deed or otherwise, severed from the underlying mineral estate and the two are owned by different persons. Where that is the case, the mining should be carried on and the minerals removed without injury to the surface. And unless the surface owner has parted with or waived his right in the matter or it has been taken away by statute, he is entitled to have the mining done in such a way as to leave sufficient support for the surface in its natural state, either by allowing a sufficient amount of the ground to remain or by substituting artificial supports. The owner of the surface is entitled to this absolute support of his land, not as an easement depending on a supposed grant, but as a proprietary right at common law. Moreover, this right is without regard to the comparative value of the strata or of the minerals and the surface, and liability results from its infringement irrespective of actual negligence in conducting the mining operations. It is immaterial that the minerals have been removed carefully and skillfully and by means of the most approved system of mining. The right to such surface support cannot be defeated by a custom among miners—such as a custom permitting miners upon ceasing further mining operations to remove the pillars or ribs of mineral which were left for surface support.

I find in 58 Corpus Juris Secundum, page 335, paragraph 159 the following:

"In the absence of an authorization contained in the grant or reservation, the mineral owner may not destroy the surface of the land by strip mining. Where however, a grantee of the surface of land accepts a deed containing unequivocal exceptions of minerals such as a seam of coal, and the reservations as to mining rights, including the mining of the mineral by stripping, the mineral owner may mine by stripping in the absence of statutory inhibition, fraud, or other vitiating circumstances."

I note also in 58 Corpus Juris Secundum, page 333 the following:

"The implied right to occupy as much of the surface as may be needed to open and work the mineral estate is not limited by a special grant or reservation of privileges which would not be implied. The incidental rights of the mineral owner are to be guaged by the necessities of the particular case and therefore vary with changed conditions and circumstances; in determining such rights, the courts take into consideration the circumstances, the right conveyed, the purpose for which it was conveyed and the information of the grantor and grantee in order to ascertain the intention of the parties.

In accordance with this general rule an owner of minerals may sink shafts or construct drifts or wells through the surface for the purpose of exploring and opening a way to his underlying minerals; remove or use so much of the containing strata, above and below, as may be reasonably required for the proper mining of the mineral; construct drains and tunnels; construct such roads, passways, or means of ingress and egress as may be necessary to get at and remove the minerals; use such amount of water from the land as is reasonably necessary to develop the mineral rights; construct a tramroad from the mine to be used in connection with the mining operations, if fairly necessary; erect and maintain a tipple; and generally employ all reasonable means and necessary appliances requisite to the proper working of the mine or minerals, except that where the right, granted or reserved, is to mine in a specified manner it does not give the right to mine in a different manner."

To summarize the authorities which have been set forth above, it seems to be the rule in Ohio, as well as other jurisdictions, that the owner of the surface has a right to subjacent support of the surface unless the reservation of the minerals contained in the deed expressly provided to the contrary. It therefore, becomes necessary to examine the wording of the reservation in the deed from George Corn to the Symnes Valley Coal Company recorded in Deed Book 79, page 415 of the Lawrence County, Ohio Deeds Records and dated February 16, 1905. The last part of this reservation which has been set forth in full in this also provides as follows:

"It is expressly understood and agreed as part of this conveyance that in case oil or gas pipes are laid across said premises, the same where ground is tillable are to be placed beneath the surface to a sufficient depth so as not to interfere with agricultural purposes, and said grantee is to pay to the grantor herein 25c per lineal rod for all pipes so laid."

It seems clear from the above quoted language that it was the intention of the grantor and the grantee that the mining rights should be exercised without interfering with the use of the land for agricultural purposes, and it is the court's opinion that the plaintiff has the right to use the premises for the extraction of minerals in such manner as not to interfere with the owner of the surface in agricultural pursuits. If this were not so, why was this provision inserted in the reservation of the minerals?

The interpretation of the reservation contained in the deed from George Corn to the Symmes Valley Coal Company placed upon this language by the plaintiff, is that he has a right to enter the premises of the defendants and upon payment of $30.00 an acre, may proceed to strip the entire area of the farm. This of course, would include the buildings situated on the premises, the destruction of fences, tillable land, pasture land and any other land which he may desire to mine. Certainly, this was not within the contemplation of the parties when the minerals were reserved in the deed which I have referred to above.

If we are to place upon the reservation the interpretation contended for by the plaintiff, let us see what the defendants purchased when they acquired the surface rights by deed from Oma E. Lemaster and O. M. Lemaster to themselves by deed recorded in Deed Book 210, page 445 of the Lawrence County, Ohio Deed Records. The deed conveying the surface to the defendants, if we are to accept the interpretation of the plaintiff, would amount to a nullity. In other words, the defendants have parted with consideration for the surface and the revenue stamps indicate a consideration in the neighborhood of five to six thousand dollars for a mere right to occupy these premises until such time as the plaintiff desires to pay the sum of $30.00 an acre and completely destroy the surface of the farm. Certainly, this was not the contemplation of the parties when the minerals were reserved and certainly, it would be inequitable and unjust for a court to hold that the owner of the surface received by his warranty deed only a right to reside upon the premises until such time as the plaintiff desired to come in with the necessary equipment, and remove the buildings, fences, tear up the entire surface of the farm.

I cannot bring myself to the conclusion that it was the intention of the parties at the time the minerals were reserved to permit the owner of the minerals to completely destroy the surface of the farm which is now owned by the defendant. It is my opinion further, that the language which I quoted above

contained in the reservation of the minerals clearly indicates that intention on the part of the owner of the minerals not to destroy the surface of the land, but rather to keep the surface intact and this is clearly the implication from the language quoted above wherein it is stated that in the event pipes are placed beneath the premises, they are to be placed in such manner as to not destroy the land for agricultural purposes. This is a clear implication in my opinion that the grantor in the deed from George Corn to the Symmes Valley Coal Company did not intend to part with subjacent support of the soil.

It is my opinion that the true interpretation of this reservation is that the owner of the minerals has the right to mine and remove the minerals in such manner as not to interfere with agricultural purposes and with the normal use of the surface of the land; that the provision in the reservation wherein the owner of the minerals may pay $30.00 per acre for use of the surface applies only to so much of the surface as is necessary for tramways, necessary buildings and appurtenances to the mining of the coal underlying the premises. I do not interpret this particular provision as meaning that the owner of the minerals may pay $30.00 an acre and arbitrarily use the land of these defendants. He is only entitled to purchase so much as is absolutely necessary for the mining operations in removing the coal underlying the surface.

I am aware of the fact that it is not profitable to mine this land by deep mining or drift mining methods, that the evidence in this case is clear that the premises may not be profitably mined by other than strip mining methods. However, my interpretation of the mineral reservations, so I have stated above, does not permit me to draw the conclusion that the plaintiff has the right to engage in strip mining on these premises. This case is one of utmost importance due to the fact that there are many other similarly worded mineral reservations in Mason Township, and I am aware that this is a case of great importance, not only to the plaintiff as owner of the mineral rights, but also to the owners of the surface rights where there are similar mineral reservations.

I am also aware of the fact that normally, persons holding mineral reservations cannot be held to archaic and ancient mining methods which are no longer profitable, but as I interpret this reservation, the mining must be conducted in such manner as not to destroy the surface or the normal farming uses of the premises.

The second cause of action in the plaintiff's petition is for damages and it is claimed by the plaintiff that he is the owner

of three thousand acres of mineral rights located in Lawrence County, and that he is in the business of buying and selling mineral rights and developing mining rights and due to the fact that he has been unable to mine or prospect for minerals underlying the premises of the defendants, he has been damaged in the sum of $10,000.00.

The plaintiff himself testified that he had an agreement with certain other parties whereby he was to sell the mineral rights underlying several thousand acres in Lawrence County, Ohio, that by reason of his failure to acquire the mineral rights under the premises described in the petition, that the entire transaction could not be consummated resulting to his damage in the sum of $10,000.00. It was his estimate that there are approximately seven thousand tons of coal per acre underlying the premises and that there were approximately fifteen acres of coal lands on the tract owned by the defendants, that he had a royalty agreement for 15c a ton from Lindsey Bellville, a strip mine operator for the coal underlying the defendants premises and that now the highest offer which he could get was 10c a ton, thereby resulting in a loss of five cents per ton on the prospective yield of coal underlying these premises.

It is noted the plaintiff did not state with whom he had the agreement over the purchase of the mineral rights which could not be consummated, and the extent of his loss is purely speculative, and are not based upon fact. Furthermore, it appeared from the evidence that the defendants' deed from Oma Lemaster and O. M. Lemaster to the defendants made no mention of mineral rights and that the defendants in good faith believed that they were the owners of both the surface and the minerals since no mention was made in the deed of the reservation of the minerals. Under all of these circumstances, it is the court's opinion that the plaintiff has failed to show by a preponderance of the evidence that he has suffered a loss. In addition to this, under the court's interpretation of the reservation, he would not have a right to enter the premises for the purpose of strip mining any way, and it is therefore the order of the court that the petition of the plaintiff be dismissed, and that the plaintiff be denied an injunction against the defendants as prayed for in his petition

An entry may be prepared accordingly, noting the exceptions of the plaintiff to the ruling of the court.