# Richmond

BEULAH C. PHIPPS, ET AL. v. WILLIAM MARCUS LEFTWICH, ET AL.

March 5, 1976.

Record No. 750307.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Glen M. Williams*, for appellants.

*Benjamin F. Sutherland*, for appellees.

No brief filed on behalf of Glendy Short Lovegrove.

COCHRAN, J., delivered the opinion of the court.

The question raised in this appeal is whether the deed under which appellants claim title to coal in certain lands gives appellants the right to remove the coal by strip mining[1] or other surface mining methods.[2]

By deed dated May 16, 1902, Wm. B. Sutherland and wife conveyed to Clintwood Coal and Timber Company the following estate in 1,423 acres of land in Dickenson County, consisting of two adjoining tracts described by metes and bounds, and containing 1,019 and 404 acres, respectively:

"All the coal, mineral and mineral products, all the oils and gasses all the salt, minerals and salt waters, fire and potters clay, all the iron and iron and iron ores, and all stone in on and under the herein after described tract of land, and have also this day sole to the party of the second part such of the standing timber not exceeding twelve inches in diameter as may be necessary for mining purposes, and the exclusive right of way for any and all rail road, tram roads that are now or may hereafter be located on the property hereinafter described either by said party of the second part, except as hereinafter provided, his heirs successors and assigns or any other person or corporation under the authority of said party of the second part his heirs successors and assigns upon the hereafter described tract of land, together to enter upon said tract of land and use and operate the same and the surface thereof free from further costs or damage in all or any manner that may deemed necessary or convenient for mining preparing for market and removing therefrom or otherwise utilizing all or any of the said coal or minerals or the coal or minerals and the manufacture of the same and shipping the said articles and products above named; without liability for injury to the surface of said land or to any thing thereon or thereunder by reason of the mining, manufacture or removal of said coal minerals, etc. or by reason of diverting confining or using the water or water ways on said property; for all which the party of

---

[1] "Strip mining is done from the surface of the earth. In general, it is performed by stripping off the earth, known as overburden, which lies over the coal and then removing the coal so uncovered." *Parsons* v. *Smith,* 359 U.S. 215, 216, n. 1 (1959).

[2] Code § 45.1-199 (Repl. Vol. 1974) defines coal surface mining as "[t]he breaking or disturbing of the surface soil or rock in order to facilitate or accommodate the extraction or removal of coal by strip, auger, or other mining methods . . . ."

the second part his heirs successors and assigns is hereby released from liability as well as to remove the products now owned or hereafter acquired by the said party of the second part of his heirs successors and assigns in the free and full exercise and the enjoyment of the rights and privileges herein granted. It is understood and agreed that the free right of ingress and egress in, on, over, under and through said lands hereinafter described is also hereby sold and granted to the said party of the second part his heirs successors and assigns.

\* \* \*

". . . It is expressly understood that the right to mine and use coal for household purposes on the premises is reserved to the parties of the first part provided however, that the said fire and potters clay and timber for mining privileges shall not apply to said 1019 acre tract."

By deed dated January 26, 1911, Wm. B. Sutherland and wife conveyed to Jasper Sutherland two tracts containing a total of 1,843 acres, including the 1,423 acres. Mineral rights were expressly excepted from this conveyance.

Appellants, as successors in interest to Clintwood Coal and Timber Company, acquired title to the minerals and mineral rights conveyed to Clintwood by the 1902 deed. Appellees, as successors in interest to Jasper Sutherland, acquired title to a portion of the surface of the 1,423 acres.

Appellees filed their bill of complaint in the trial court, against appellants and others, seeking a declaratory judgment that the 1902 deed be construed not to permit "stripping rights" on or under the 1,423 acres. Appellees alleged that appellants, as owners of the minerals and mineral rights, had permitted one D. Siddens to go upon the land with men and machinery and tear up the soil and destroy timber exceeding twelve inches in diameter, and that these actions would continue unless enjoined. Appellees prayed that appellants be restrained from exercising any rights "not in contemplation of the parties" when the 1902 deed was executed.

Appellants filed an answer in which they asserted that the 1902 deed gave them the right to remove coal by "the strip or open pit mining method", and that they had leased to Siddens only such rights as they had acquired under that deed.

Appellees concede that appellants are vested with title, not only to the coal and mineral rights in the 1,423 acres, but also to the surface of

two parcels thereof, containing 107 acres and 30.89 acres, the precise locations of which are not disclosed by the record.

By final order entered December 2, 1974, pursuant to an opinion previously filed, the trial court ruled that the 1902 deed did not grant the right to remove coal and other minerals by "surface mining, strip mining, open pit mining, auger mining, or any combination of methods of surface mining, whether or not hereinabove listed, the conveyance of such surface mining rights or 'stripping rights' not being within the contemplation of the parties to the deed . . . ." The order further provided that under the deed the grantee or its successors may employ such surface mining methods "only with the consent of the grantors in said deed, or their successors", and enjoined appellants from mining coal by any form of surface mining on any part of the 1,423 acres.

The only witness in the case was appellee S. H. Sutherland, an attorney 93 years of age, who was the son of Jasper Sutherland and the nephew of Wm. B. Sutherland, grantor in the 1902 deed. S. H. Sutherland's testimony, given by deposition, tended to establish that Jasper, an illiterate Confederate veteran, acquired, lived on, and farmed the 1,423 acres continuously from 1895 until his death in 1936; that approximately 200 acres constituted cleared land; that Wm. B. Sutherland held legal title to the land in 1902 for the benefit of his brother, Jasper; that coal was believed to be the only mineral on the land; that Jasper received as consideration for the 1902 deed to Clintwood, the sum of $2,635, computed at only $1 per acre for the 1,019 acre tract, due to uncertainty concerning title to the coal thereon, and at $4 per acre for the 404 acre tract; that the 1902 market value of the cleared land was $10,000 and of the improvements $5,000; that in 1902 the timber on the two tracts was more valuable than the coal deposits; that in 1915 and 1919 Jasper sold timber on the property for the aggregate sum of $27,000; that the only mining method used in Dickenson County in 1902 was "deep mining"; and that strip mining was not known in this county until the 1940's. The witness also testified that in 1919 he acquired 2/7ths of the stock in Clintwood Coal and Timber Company, and became president of the corporation.

Sutherland vividly described the effects of surface mining. In strip mining a large excavation or "bench" is cut in and around a hillside by heavy machines which uncover and remove the coal. The excavation leaves a vertical "highwall". Large augers are used to bore into the face of this wall and extract coal left behind it beneath the overburden.

The earth that is moved from the coal strata buries vegetation, and displaced rocks knock down timber. Stripping "destroys . . . the value of the land".

Sutherland testified that he had seen evidence of two strip mining operations on the 1,423 acres. Several years previously he had seen on the 404 acre tract an excavation about thirty feet long and not more than one or two feet deep, which had been abandoned by the operator before Sutherland could find him. Subsequently, after Sutherland had ascertained that Siddens was preparing to strip mine on the 1,019 acre tract, this proceeding was initiated. The record does not show whether the strip mining operations observed by Sutherland were conducted on any part of the surface tracts owned by appellants.

Appellants contend that the broad language of the 1902 deed gave the grantee and its successors the right to strip mine. They rely on the grantee's right under the deed to enter upon the land "and use and operate the same and the surface thereof free from further costs or damages in all or any manner" deemed "necessary or convenient." Appellants correctly assert that if the meaning of the language used is plain the instrument must be given effect accordingly. *Yukon Poca. Coal Co.* v. *Ratliff*, 181 Va. 195, 202, 24 S.E.2d 559, 562 (1943). Explicit language in a deed, granting the "right to strip the surface" for fire clay, has been held sufficient in Pennsylvania to permit stripping, even though modern stripping methods were unknown at the time of severance. *Heidt* v. *Aughenbaugh Coal Company*, 406 Pa. 188, 176 A.2d 400 (1962). That deed specifically allowed the grantee to employ any type of mining which might "hereafter", *i.e.*, after 1915, be developed. No such explicit language is found in the present deed, however, and any surface mining rights of appellants can only arise by implication.

The fundamental rule of construction in Virginia is that the purpose or intent of a written instrument is to be determined from the language used in the light of the circumstances under which it was written. *Traylor* v. *Holloway*, 206 Va. 257, 260, 142 S.E.2d 521, 523 (1965). The intent of the parties to a deed is paramount and must be determined by construing the instrument as of the date and under the circumstances of its execution, although, in case of ambiguity, it is to be construed against the grantor. *Ellis* v. *Commissioner*, 206 Va. 194, 202, 142 S.E.2d 531, 536 (1965). In that case, a 1927 deed conveyed title to stone on a parcel of land and granted the right to quarry the stone and to use such surface of the land as may be necessary and

convenient in operating the quarry, "including the right to erect buildings". The evidence showed that, although concrete block manufacturing plants were unknown in the area when the deed was executed, such a plant was erected on the property some years later. We held that, as there was no evidence that such a plant was necessary and convenient to the quarry operation, or that it was within the contemplation of the parties to the deed, the plant was erected without authority and became the property of the owner of the freehold. *See also Beury* v. *Shelton*, 151 Va. 28, 39, 144 S.E. 629, 632 (1928), where we held that, in determining the extent of minerals granted by a deed, the meaning will be restricted to that given it by local custom, if the language of the deed or the circumstances under which it was executed shows an intention to restrict it. Usually the noun "mines" imports a cavern or subterranean place, containing metals or minerals, and not a quarry. *Id*. at 40, 144 S.E. at 632.

There is uncontradicted evidence that strip mining was unknown in Dickenson County in 1902 and that the only method of mining then recognized in the area was underground mining, such as shaft, deep, or drift mining. Thus, underground mining was the only kind of coal mining within the contemplation of the parties to the 1902 deed, and, therefore, the broad language of the deed is applicable only to underground mining.

Appellants argue that, since the deed gave the right to remove stone from the land, as well as iron ore, fire and potters clay, which could be removed "in any manner", the parties contemplated destruction of the surface. We will assume, although there is no evidence to support it, that these substances in 1902 could only be removed by disturbing the surface. Under these circumstances such surface disturbance would have been within the contemplation of the parties and would be permissible. The evidence shows, however, that only coal was believed to be on the land. Moreover, the deed conveyed fire clay, potters clay, and timber of specified size on only the 404 acre tract. There was evidence that this timber was used only in deep mining operations. If the right to destroy the surface for mining purposes had been within the contemplation of the parties, the grantee would have had the right to remove all timber, regardless of size. Thus, inclusion in the deed of the restricted right to remove timber reinforces the conclusion that the parties contemplated only underground mining.

We have been unwilling to construe a deed so as to hold that

the owner of a mineral estate has the right to destroy the surface, unless such right has been expressed in unmistakably plain terms. *Stonegap Colliery Company* v. *Hamilton*, 119 Va. 271, 281, 89 S.E. 305, 310 (1916). There, we held that a grant of "all of the coal", with the right to remove it, did not waive the surface owner's right to subjacent support, and the owner of the coal was required to leave sufficient coal to provide such support. *See also Clayborn* v. *Camilla Red Ash Coal Co.*, 128 Va. 383, 387, 105 S.E. 117, 122 (1920), where we held, contrary to the majority rule which we considered and disapproved, that a grant of coal with the right to mine and remove it includes only those specified rights, and if the coal owner expects more he must stipulate for it.

It is generally held in other jurisdictions that the owner of the mineral estate will not be permitted to destroy the surface without liability, even when open pit mining was contemplated, unless the owner of the surface estate has clearly waived his right to subjacent support. *Smith* v. *Moore*, 172 Colo. 440, 474 P.2d 794 (1970); *Benton* v. *U.S. Manganese Corporation*, 229 Ark. 181, 313 S.W.2d 839 (1958); *Campbell* v. *Campbell*, 29 Tenn. App. 651, 199 S.W.2d 931 (1946).

Appellants insist that *Yukon Poca. Coal Company* v. *Ratliff, supra*, relied upon by appellees and by the trial court, supports appellants' position. In that case, we held that conveyance of the mineral estate, with the right to erect "structures" and "devices", did not authorize construction of miners' houses, a hotel or a hospital. Appellants rely on the following language from *Williams* v. *Gibson*, 84 Ala. 228, 233-34, 4 So. 350, 353-54 (1888), which we inaccurately quoted with approval in *Yukon*:

"These incidental rights of the miner, which are appurtenant to the grant of the mineral rights, are to be gauged by the necessities of the particular case, and, therefore, vary with changed conditions and circumstances. He may occupy so much of the surface, adopt such machinery and modes of mining, and establish such auxiliary appliances and instrumentalities as are ordinarily used in such business, and may be reasonably necessary for the profitable and beneficial enjoyment of his property. But he is not limited, as we have already said, to such appliances as were in existence when the grant was made, but may keep pace with the progress of society and modern invention."

This quotation was approved by us again in *Oakwood, etc., Coal Corp. v. Meadows*, 184 Va. 168, 175, 34 S.E.2d 392, 395 (1945), where we held that the owner of mining rights, in draining percolating water by gravity to the mouth of the mine and thence down a mountainside, was not liable for polluting a spring.

We agree with appellees that this language does not authorize enlargement of the estate granted by the 1902 deed. Appellants may, of course, take advantage of developments in the operation of underground mines which modern technology may make available. Improvements in mining machinery, power, lighting, ventilation, transportation, and safety facilities may be utilized. A change, however, from underground mining, which leaves the surface substantially usable by the owner of the freehold, to surface mining, which destroys what was reserved by the grantor, is not permissible.

Courts elsewhere have generally held that strip mining will not be permitted under deeds to coal and mineral rights executed when strip mining was unknown to the parties to the conveyances. 54 Am. Jur.2d *Mines and Minerals* § 114, p. 296 (1971). Thus, in *West Virginia-Pittsburgh Coal Company v. Strong*, 129 W. Va. 832, 836, 42 S.E.2d 46, 49 (1947), it was held that a 1904 deed conveying "all" the coal in a tract of land did not give the right to strip mine, but contemplated mining "by the usual method at the time known and accepted as common practice" in the county. To the same effect are *Oresta v. Romano Brothers, Inc.*, 137 W. Va. 633, 73 S.E.2d 622 (1952); *Brown v. Crozer Coal & Land Company*, 144 W. Va. 296, 107 S.E.2d 777 (1959); and *United States v. Polino*, 131 F. Supp. 772 (N.D. W. Va. 1955). To the contrary is *Commonwealth v. Fisher*, 364 Pa. 422, 72 A.2d 568 (1950), where it was held that the surface owner had impliedly released his right to subjacent support and that strip mining was permissible under an 1855 deed granting the right "to dig, excavate or penetrate any part of the premises" to remove coal, although strip mining was not contemplated by the parties to the deed. The land was unimproved mountain land, and the only way to remove the remaining coal deposits was by stripping.

If strip mining was an accepted practice at the time of execution of conveyances of minerals and mineral rights, courts have construed the deeds to give the right to strip mine. *Department of Forests & Parks v. George's Creek C. & L. Co.*, 250 Md. 125, 242 A.2d 165 (1968); *Commonwealth v. Fitzmartin*, 376 Pa. 390, 102 A.2d 893 (1954).

Subsequent Pennsylvania decisions have cast doubt upon the pre-

credential value of *Fisher*. In *Rochez Bros.* v. *Duricka*, 374 Pa. 262, 97 A.2d 825 (1953), the court held that strip mining was not permissible where, although this method of mining was known at the time, the language in the deed indicated that the parties contemplated only underground mining. More significantly, in *Wilkes-Barre Township School District* v. *Corgan*, 403 Pa. 383, 170 A.2d 97 (1961), the court considered the language of the deed, executed in 1893, and the surrounding circumstances, including the fact that strip mining operations "were never heard of in the hard coal field until recent years", in determining that the parties intended that only underground mining be conducted. In *New Charter Coal Company* v. *McKee*, 411 Pa. 307, 191 A.2d 830 (1963), it was held that the language of the deed alone was sufficient to show that strip mining was not authorized. To the same effect is the Ohio case of *Franklin* v. *Callicoat*, 53 Ohio Ops. 240, 119 N.E.2d 688 (1954).

In Kentucky it has been held that a "broad form" deed to minerals and mineral rights, with a waiver of damages for disturbing the surface, will be construed to permit strip mining, even though such method of mining was not known when the deed was executed, and will destroy the surface. *Buchanan* v. *Watson*, 290 S.W.2d 40 (Ky. 1956). Kentucky and Pennsylvania follow the general rule of construction that the language of the deed will control unless it is ambiguous, but if it is ambiguous, it will be construed most strongly against the grantor. *See Croley* v. *Round Mountain Coal Company*, 374 S.W. 2d 852 (Ky. 1964). In *Martin* v. *Kentucky Oak Mining Company*, 429 S.W.2d 395 (Ky. 1968), the court considered the situation and circumstances existing when the "broad form" deeds were executed, in determining that strip mining was permitted. The evidence showed that when the deeds were executed in 1900 the average value per acre of land in the county was less than the amount paid per acre for the mineral rights acquired under the deeds. Most of the land in question was hillside land of no productive value, raising the inference that the grantees had paid the fee simple value of the land to obtain the mineral rights. Therefore, the majority of the court, seeing nothing inequitable in construing the deeds in favor of the grantees, adhered to the principles enunciated in *Buchanan* v. *Watson, supra,* 290 S.W.2d 40 (Ky. 1956), and held that strip mining was permitted.

It appears that the later Pennsylvania and Kentucky cases have adopted a test for determining the intent of the parties predicated upon construction of the written instrument and an analysis of the

totality of the surrounding circumstances. *New Charter Coal Co.* v. *McKee, supra,* 411 Pa. at 314, 191 A.2d at 834, *Martin* v. *Kentucky Oak Mining Company,* 429 S.W.2d at 397-98. This is the test which we have consistently approved and which we hold is applicable in the present case.

We hold in the present case that the parties to the 1902 deed contemplated only underground mining of coal. Therefore, the trial court did not err in ruling that in removing coal the grantee and its successors may employ surface mining methods only with the consent of the owners of the surface. We express no opinion as to the use of surface mining methods to remove other minerals or stone, because that question is not before us.

Appellants complain that the trial court enjoined them from mining coal by surface mining on any part of the 1,423 acres, including the tracts in which they own the surface as well as the minerals and mineral rights. We construe the injunctive order to carry out the previous ruling of the trial court, that surface mining may be conducted only with the consent of the surface owners. Accordingly as so construed, the order did not enjoin appellants from engaging in surface mining on their own lands, as they are entitled to do.

*Affirmed.*