James BALL, et al., Plaintiff,

v.

ISLAND CREEK COAL CO.,
Defendant.

Clarence VANDYKE,

v.

ISLAND CREEK COAL CO.

Ira Leon VANDYKE, et al., Plaintiffs,

v.

ISLAND CREEK COAL CO., et
al., Defendants.

Civ. A. Nos. 87–0143–A,
87–0307–A, 88–0078–A.

United States District Court,
W.D. Virginia,
Abington Division.

Sept. 7, 1989.

E.K. Street, Grundy, Va., R. Kenneth Wheeler, Richmond, Va., and H.A. Street, Grundy, Va., for plaintiffs, Clarence Vandyke, Ira Leon Vandyke and James Ball, et al.

Stephen M. Hodges, Wade M. Massie, Abingdon, Va., for Island Creek Coal Co., et al.

S.D. Roberts Moore, Walter H. Peake, III, Roanoke, Va., for third-party defendants James Ball, et al.

Jerry K. Jebo, Radford, Va., for Nationwide Ins.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on defendant's motion for summary judgment and the third party defendants' motion to dismiss the third party complaint in Civil Action No. 88–0078–A. The court has jurisdiction pursuant to 28 U.S.C. § 1332.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 28, 1907, Joseph Vandyke conveyed coal, oil, gas and mineral rights to A.D. Harrah. Similarly on March 30, 1908, E.K. Boyd conveyed all the coal, oil, gas and mineral rights to 18 tracts of land to A.D. Harrah. These deeds provided, in part, that the grantee had

> the right to remove all the coal and other minerals, oil and gas as herein granted without leaving any support for the overlying strata, and without any liability for damage which may result from the breaking of said strata....

Joseph Vandyke is Ira Vandyke's predecessor in title; E.K. Boyd is the Balls' and Clarence Vandyke's predecessor in title; and A.D. Harrah is the defendant's predecessor in title.

The defendant began using the longwall[1] method of mining coal on the property in question in 1985. Plaintiffs allege that this method of mining causes severe vibrations, seismic shocks and subsidence which have resulted in damage to their real and personal property. Plaintiffs also allege that this method of mining causes the release of methane gas which has resulted in at least three gas fires spontaneously igniting on the surface of the land. Clarence Vandyke alleges that on March 7, 1986, his home, dairy building and the personalty therein were destroyed by a gas fire that ignited when he turned on a light in his basement.

Plaintiffs' complaints set forth several grounds for relief. Plaintiffs allege that the defendant caused damage to their realty and that the defendant is either strictly liable or liable because it was negligent. Plaintiffs also seek recovery for mental pain and anguish. Plaintiffs further allege that the defendant's mining activities constitute a nuisance and are, moreover, in violation of the Virginia Coal Surface Mining Control and Reclamation Act of 1979. Va.Code Ann. § 45.1–226 et seq. The defendant has moved for summary judgment.

## ANALYSIS

I. Defendant's Motion for Summary Judgment

A. Waiver

■ The primary ground defendant relies upon in seeking summary judgment is that the plaintiffs' right to subjacent support and any claim for damages which result from the breaking of the strata were expressly waived by their predecessors in title in the original severance deeds.

The seminal case in this area is *Stonegap Colliery Co. v. Hamilton*, 119 Va. 271, 89 S.E. 305 (1916). In *Stonegap*, the plaintiff sued the defendant for mining coal without leaving support for the surface. *Id.* at 278, 89 S.E. at 307. Although the defendant had the right to remove all the coal, the court refused to infer from the use of the word "all" that the plaintiff had waived his right to subjacent support. *Id.* at 293, 89 S.E. at 311. The Virginia Supreme Court stated:

---

1. In longwall mining "two widely spaced tunnels are driven into the seam from the main haulage tunnel and are linked by a fourth tunnel. The fourth tunnel may be near the main haulage tunnel (the advancing longwall method) or may be at the ends of widely spaced tunnels (the retreating longwall method). Coal is removed by widening the fourth tunnel." 4 Encyclopedia Britannica, *Coal Mining*, 774 (1974).

[W]hen a grantor, as in this case, sells the surface of the land, he knows that the use of it for farming and other purposes is contemplated and assents thereto. He also is presumed to know that when all the coal is removed, the overlying surface will sink unless supported, and if he desired to reserve rights inconsistent with the full enjoyment of the surface, it is his duty to reserve those rights by clear and unequivocal language.

*Id.* at 292, 89 S.E. at 311. Thus, the court in *Stonegap* implied that a waiver of the right to subjacent support would be effective if it is made in "clear and unequivocal language." *See id.* This court therefore determines that Virginia would give effect to the surface owner's waiver of his right to subjacent support if that right is waived in the deed in "clear and unequivocal language." [2]

A possible exception to the rule of giving effect to a clear waiver of one of the surface owner's rights was recognized in *Mullins v. Beatrice Co.*, 432 F.2d 314 (4th Cir.1970). However, that exception is limited to the situation where the face of the deed in question reveals that the contemplated use of the surface is in conflict with the waiver of that right. *Id.* at 319.

The court concludes that the plaintiffs' predecessors in title expressly waived their rights to subjacent support in "clear and unequivocal language." In the deeds here the surface owners conveyed to the mineral owners the right to remove minerals "without leaving any support for the overlying strata...." Such language clearly shows that the surface owners intended to part with their rights to subjacent support. When the plaintiffs bought the property in question, they bought the surface without an accompanying right of subjacent sup-

port. Moreover, there is nothing on the faces of the deeds here to indicate that the parties contemplated a use of the surface inconsistent with a waiver of subjacent support. Therefore, under the deeds, the plaintiffs' predecessors in title waived their rights to subjacent support, and the defendant is allowed to remove the coal without leaving support for the overlying strata and to be free from liability for the consequences of such removal.

The plaintiffs contend that the defendant is not entitled to use longwall mining because the parties to the original severance deeds could not have foreseen the existence of this method. The plaintiffs have submitted the affidavit of William C. Messer, a geologist and an engineer, who states that "[t]otal extraction long wall mining was not known in Buchanan County, or the United States, in 1908 and was not developed or known in the United States until many decades thereafter." Messer Affidavit at Paragraph 6. The defendant does not dispute the Messer affidavit and the assertions it contains will be assumed to be true for purposes of this ruling on the defendant's motion for summary judgment.[3] Thus, the court will assume that while the parties to the severance deeds contemplated underground coal mining, they did not contemplate the use of the longwall mining technique.

The intent of the parties to a deed must be determined by construing the instrument as of the date of execution. *Ellis v. Commissioner*, 206 Va. 194, 202, 142 S.E.2d 531, 536 (1965). Virginia has not addressed the issue of whether a waiver of subjacent support permits the use of longwall mining if it was not specifically contemplated by the parties at the time of execution, although it has dealt with the

---

**2.** Other states which have addressed this issue have also recognized express waivers of the right of subjacent support. *See, e.g., Winnings v. Wilpen Coal Co.*, 134 W.Va. 387, 59 S.E.2d 655 (1950); *Campbell v. Campbell*, 29 Tenn.App. 651, 199 S.W.2d 931 (1946); *Case v. Elk Horne Coal Corp.*, 210 Ky. 700, 276 S.W. 573 (1925); *Charnetski v. Miners Mills Coal Mining Co.*, 270 Pa. 459, 113 A. 683 (1921).

**3.** This court notes, however, that another federal court has made a finding of fact that "the longwall mining process has been known ... in the United States generally, and overseas for at least a century." *Culp v. Consol Pennsylvania Coal Co.*, No. 87–1688, 1989 WL 101553, 1989 U.S.Dist. LEXIS 8193 at 29 (W.D.Pa. May 4, 1989). The court supported its finding by reference to several learned treatises. *Id.*, 1989 WL 101553, 1989 U.S.Dist. LEXIS 8193 at 29–30.

issue in regard to strip mining. The plaintiffs cite *Phipps v. Leftwich*, 216 Va. 706, 222 S.E.2d 536 (1976) in support of their assertion that the waiver does not permit such a use.

In *Phipps, id.* at 707, 222 S.E.2d at 537, a surface owner contested the claim of the mineral owner that the deed in question granted the mineral owner the right to remove coal by strip mining. The deed provided that the mineral owner could remove the coal without liability for injury to the surface. *Id.*, 222 S.E.2d at 538. The Virginia Supreme Court held that despite this language, the parties had contemplated only underground mining, and that the defendant could not conduct strip mining operations without the consent of the surface owners. *Id.* at 715, 222 S.E.2d at 542.

Pennsylvania also has declined to hold that a waiver of subjacent support was authority to conduct strip mining. *Merrill v. Manufacturers Light & Heat Co.*, 409 Pa. 68, 75, 185 A.2d 573 (1962). However, a federal court, applying Pennsylvania law, has determined that Pennsylvania would allow longwall mining where there has been a clear waiver of subjacent support. *Culp v. Consol. Pennsylvania Coal Co.*, No. 87–1688, 1989 WL 101553, 1989 U.S. Dist. LEXIS 8193 at 45 (W.D.Pa. May 4, 1989). The court distinguished *Merrill* by noting that there is a difference of *kind* between underground mining and strip mining. *Id.* 1989 WL 101533, 1989 U.S. Dist. LEXIS 8193 at 27 (citing *Stewart v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970)).

In *Phipps*, the Virginia Supreme Court also appeared to recognize this distinction between strip mining and underground mining by contrasting the two. 216 Va. at 713, 222 S.E.2d at 541. It asserted that underground mining "leaves the surface substantially usable" while strip mining "destroys what was reserved by the grantor." *Id.* The court in *Phipps* concluded that the parties to a deed must be found to have specifically contemplated the use of strip mining before such use would be permitted. *Id.* at 715, 222 S.E.2d at 542. Al-

though it was not stated as such in *Phipps* this court concludes that underlying the result in *Phipps* are the principles that a waiver of the right to subjacent support and the right to destroy the surface, i.e., strip mine, are not identical, and that while a waiver of the right to subjacent support is a prerequisite to finding a right to strip mine, it is not conclusive of such a right. *See Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374, 377 (1974).

Neither longwall mining nor any other underground mining technique destroys the surface in the sense that strip mining does. Strip mining directly removes and thus totally destroys the surface while underground mining damages the surface, if at all, only indirectly by removing its subjacent support. Modern longwall mining is different from the underground mining techniques available when the severance deeds were executed in the degree of damage, and not the kind of damage, it causes to the surface. Thus, neither the use of modern longwall mining nor the use of any other underground mining technique requires the existence of the right to destroy the surface as the use of strip mining does. Therefore, whether the parties to a deed contemplating the use of underground mining contemplated the use of a particular underground mining technique is irrelevant in regards to the permissibility of the use of that technique.

The court in *Phipps* appeared to recognize this fact by its statement that the mineral owner in that case could "of course, take advantage of developments in the operation of underground mines which modern technology may make available." 216 Va. at 713, 222 S.E.2d 541. Although this statement is dictum, it is a sound principle. The plaintiffs cannot reasonably contend that the defendant should mine using picks and shovels to excavate the coal and donkeys and mules to transport the coal as was the custom at the time the deeds were executed. *See* Affidavit of William Messer. In 1908, as today, the parties knew that "knowledge [would] increase," *see* Daniel 12:4, and that better mining techniques would become available. An owner of mineral rights should be allowed

to take advantage of modern technology subject to the terms of the deed.

■ The court determines that where a deed clearly waives the surface owner's right to subjacent support in regard to underground coal mining, Virginia law would allow the use of longwall mining or any other underground mining technique by the mineral owner, even if such technique was not specifically contemplated by the parties to the deed at the time of its execution. The court has already concluded that the plaintiffs have waived their right to subjacent support; consequently, the court concludes that the defendant is not prohibited from using the longwall method of mining.

■ The deeds in question provide that the owner of the mineral estate can mine without leaving subjacent support and "without any liability for damage which may result from the breaking of said strata...." The plaintiffs here do not complain only of loss of subjacent support. In fact the pleadings allege that the damage arises from vibrations, seismic shock, and escape of methane gas.

Because the deeds release the defendant only from liability for damages resulting from the breaking of the strata, the ultimate issue of fact in this case is whether the plaintiffs' alleged damages spring from the breaking of the strata or from another aspect of the defendant's activities. The *only* evidence before this court on this issue is the affidavit of Ken Price, who holds a degree in mineral engineering and is employed by the defendant. Mr. Price asserts that "any vibrations or seismic activity, any change in elevation, or movement of the surface and any release of methane gas ... to the extent that they resulted from [defendant's] mining activities, resulted from removal of the coal ... supporting the overlying strata and the shearing, shifting or other breaking of said strata." Price Affidavit at 2. The plaintiffs have not produced any evidence on this issue. Therefore, the evidence before this court is uncontroverted that all of the plaintiffs' alleged damages were caused by the removal of coal by the defendant and

the resulting breakage of the strata. The plaintiffs' predecessors in title provided that the owner of the mineral estate could remove coal "without any liability for damage" which could result from the breaking of the strata. Accordingly, summary judgment is granted in favor of the defendant in regard to all of the plaintiffs' claims except for the plaintiffs' claims based on the Virginia Coal Surface Mining Control and Reclamation Act of 1979 (VCSMCRA), which are discussed below.

The court notes that the procedural posture of this case is very important to its outcome. The Rules of Civil Procedure provide:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Fed.R.Civ.P. 56(e) (emphasis added). The United States Supreme Court interpreted this portion of the rule in *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In *Liberty Lobby*, the Court held that while the "movant has the burden of showing that there is no genuine issue of fact, the [nonmovant] is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict ... instead the [nonmovant] must present affirmative evidence in order to defeat a properly supported motion for summary judgment." 477 U.S. at 257, 106 S.Ct. at 2514. Thus the movant for summary judgment has the initial burden of production. Note, *Civil Procedure—Requirement of Affirmative Evidence by Party Moving for Summary Judgment—Celotex Corp. v. Catrett*, 35 Kansas L.Rev. 831 (1987). Once the movant satisfies this burden it shifts to the nonmovant. *Id.* At this juncture, it is not sufficient to present an argument denying

the moving party's allegations, rather affirmative *evidence* is required to defeat the motion. Fed.R.Civ.P. 56; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514.

In the present case the defendant, as the party moving for summary judgment, met its burden of production. The defendant submitted affidavits of a real estate attorney who had researched the plaintiffs' titles and had concluded that they were subject to the waivers of subjacent support contained in the original severance deeds. *See* Affidavits of Thornton L. Newlon. Attached to the affidavit are copies of the original severance deeds. *See id.* The defendant also submitted an affidavit that the vibrations, seismic shocks and methane gas release of which the plaintiffs complain were caused by the breaking of the strata. *See* Price Affidavit at 2. Because the defendant met its initial burden of production, the burden shifted to the plaintiffs to come forward with some affirmative evidence. The only evidence plaintiffs submitted, however, was an affidavit that longwall mining was unknown in 1907. Based upon this evidence, the court had to determine whether the defendant met its burden of persuasion. As noted earlier, the ultimate issue in this case is whether the plaintiffs' damages spring from the breaking of the strata or from another aspect of the defendant's activities. The only evidence before the court is that the vibrations, shocks and release of methane gas were caused by the breaking of the strata. The plaintiffs submitted no evidence whatsoever on this issue. If they had submitted evidence that their damages resulted from something other than the breaking of the strata, then there would have been a genuine issue of material fact and summary judgment would have been inappropriate. Rather than submit evidence, the plaintiffs simply submitted arguments and left the court with no alternative other than to find that the defendant has met its burden of persuasion and to grant summary judgment in favor of the defendant.

### B. Virginia Coal Surface Mining Control and Reclamation Act

■ The plaintiff's complaint also seeks recovery pursuant to the VCSMCRA. §§ 45.1–226 *et seq.* Both parties agree that the Virginia Division of Mined Land Reclamation issued a Notice of Violation (NOV) to the defendant on April 21, 1986 for failure to notify residents six months prior to mining beneath their property and failure to repair damage caused by subsidence pursuant to Virginia Coal Surface Mining Reclamation Regulation, §§ V817.-124(b)(1) and (2). The NOV was terminated on August 8, 1986 because the defendant had initiated settlement offers to the parties involved. The plaintiffs allege that the defendant's settlement offers were "niggardly and unreasonable." In the prayer for relief in Count 6, plaintiffs ask the court to determine their damages and require the defendant to comply with the NOV.

Paragraph A.1. of Va.Code Ann. § 45.1–246.1 provides:

> any person having an interest which is or may be adversely affected may, in order to compel compliance with the provisions of this chapter, commence a civil action on his own behalf against: ... any ... person that is alleged to be in violation of the provisions of this chapter or of any rule, regulation, order or permit issued pursuant thereto....

Because the plaintiffs ask the court to require the defendant to comply with the terms of the NOV the court concludes that Va.Code Ann. § 45.1–246.1, Subd. A. 1. governs the plaintiffs' causes of action. Before an action may be brought under this subsection the plaintiff must give "written notice of the violation to (i) the Secretary, (ii) the Director (iii) any alleged violator." Va.Code Ann. § 45.1–246.1, Subd. B. 1. The defendant alleges, and the plaintiffs do not refute, that the plaintiffs did not give written notice to the Secretary[4] and the Director[5] before bringing

---

**4.** "'Secretary' means the Secretary of the Interior of the United States." Va.Code Ann. § 45.1–229.

**5.** "'*Director*' means the Director of the Department of Mines, Minerals and Energy or his authorized agent." Va.Code Ann. § 45.1–1.2.

this suit. Since the plaintiffs have not complied with these provisions, their request for injunctive relief based upon the VSMCRA are not properly before the court at this time and are dismissed. However, nothing in this section of the opinion should be construed as precluding the plaintiffs from taking further action to perfect their claim under Va.Code Ann. § 45.1–246.1, Subd. A.1.

 In addition to injunctive relief, the plaintiffs claim damages for injuries resulting from the defendant's violation of regulations issued under VSMCRA.

Va.Code Ann. § 45.1–246.1, Subd. G. provides:

> [a]ny person who as a result of the violation by any operator of any rule, regulation, order, or permit issued pursuant to this chapter, suffers injury to his person or property may bring an action for damages, including reasonable attorney and expert witness fees.

Evidence has been submitted that there were violations of the VSMCRA regulations. *See* Attachments to Ken Price Affidavit. However, the plaintiffs failed to allege or to submit evidence tending to prove that the injuries suffered by them were the result of these violations rather than the result of the subsidence itself, which is not alleged to be a violation. Thus, the claim failed to meet the statutory requirement for bringing an action under Va.Code Ann. § 45.1–246.1, Subd. G. of an injury resulting from a violation. Accordingly, summary judgment is granted to the defendant in regard to this claim.

II. Third Party Defendant's Motion to Dismiss the Third Party Complaint

 In Civil Action No. 88–0078–A, the defendant impleaded James and Sammy Ball. The defendant alleges that the fire that destroyed Clarence Vandyke's home was caused by the Balls' negligent drilling of an oil well on their property. The third party complaint seeks indemnity or, alternatively, contribution from the third party defendants. The third party defendants moved to dismiss the third party complaint

under Fed.R.Civ.P. 12(b)(6). Because the court has granted summary judgment to the defendant as to all the plaintiffs' claims, except for those requesting injunctive relief under the VCSMCRA, which were dismissed, the third party plaintiff's claim for contribution or indemnity is dismissed.

### CONCLUSION

For the foregoing reasons, the court grants summary judgment in favor of the defendant for all the claims of the plaintiffs except those requesting injunctive relief under the VCSMCRA. The claims requesting injunctive relief under the VCSMCRA are dismissed. The third party complaint, which was contingent upon the plaintiffs' complaint, is dismissed. An appropriate Order will issue.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.